AMERICAN BANKERS' INS. CO. *v.* LEE.

(Division A. June 1, 1931. Suggestion of Error Overruled July 10, 1931.)

[134 So. 836. No. 29425.]

Lotterhos & Travis and **Chalmers Potter,** all of Jackson, for appellant.

**Price & Price,** of Magnolia, **H. V. Wall,** of Brookhaven, and **Thomas Mitchell,** of Magnolia, for appellee.

Argued orally by **F. J. Lotterhos** and **Cecil F. Travis**, for appellant, and by **J. H. Price** and **H. V. Wall**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellee, George W. Lee, filed his bill in equity seeking reformation of a policy of health and accident insurance issued by the appellant dated September 30, 1929, and to recover thereon, as reformed, for an injury occurring on September 22, 1929. The application for the policy was signed by the insured on September 6th. The reformation desired was that the policy be made to insure as of date of application, based upon the allegation that by an oral contract the insured and Hunt, the agent of the insurer, agreed that the policy should take effect as of that date.

The insurance company denied that it undertook any liability prior to September 30th, the date of the policy, and denied that the agent, Hunt, had any authority to make a contract of insurance. The court below entered a decree reforming the policy as prayed, and granting a recovery to the appellee, against the insurance company, from which decree an appeal is prosecuted her.

On September 6, 1929, the insured had completed all arrangements preparatory to making a motorcar trip to the Delta and return, and expected to take out travelers' insurance from the railroad company to protect him against accident from that date. Hunt, representing the insurer, and having information that Lee expected to procure accident or travelers' insurance, approached

Lee, soliciting him to purchase insurance with him against accidents on the trip, telling him that he could write the same insurance that the railroad company would write, and that he was a customer of Lee, a merchant. The amount of the premium was twenty-eight dollars, which Hunt assured Lee would insure him against injury by accident from twelve o'clock of that day. Lee paid the amount to Hunt, the agent, who immediately forwarded it to the insurer. Subsequent to the oral agreement, and after the payment of the money, Hunt approached Lee again, and said to him, in effect: ''I have an application that you might sign, but I assure you that it is a mere formal matter, and does not affect the contract I have made with you, and does not in any way prevent the insurance from going into effect today.''

Lee testified that he relied upon this assurance, and signed the application in blank, it being afterwards filled out by Hunt; that he relied upon the integrity of Hunt, the agent, when he said that the application would be filled out in such manner that it would not affect the policy's becoming effective on that day, covering the period of his trip to the Delta.

On the 22d of September, 1929, Lee was seriously hurt in an automobile accident, and, while he was in the hospital, suffering from his injuries, Hunt delivered the insurance policy, dated September 30, 1929, saying to Lee, ''Don't worry, old man, you are insured,'' assuring him, further, that he (Lee) was insured from the day he took out the policy. Lee stated:

That he had had nothing to do with filling out the application for insurance, that Hunt told him it was a mere formality, and ''that I could sign it and he would fill it out.

''Q. It was not filled out when you signed? A. No, sir, I signed it in blank and he filled it out.

''Q. You do not know when he filled it out? A. No, sir.

"Q. You paid him the money and left on your trip thinking you had an insurance policy? A. Yes, sir.

"Q. It was on your trip back that you were hurt? A. Yes, sir."

On cross-examination this occurred:

"Q. What statements were made to you with reference to this application? A. Mr. Hunt came to my store and in the presence of that young lady, said that he had heard that I was going to get a policy from the railroad company and that he had the same kind of policy, and asked if I would not just as soon take it out with him, as he trades with me sometimes, I took out the policy with him and paid him twenty-eight dollars.

"Q. He was soliciting agent for the American Bankers' Insurance Company? A. He told me that he was representing the State Division."

The agent, Hunt, corroborated the statements of the insured in all respects; admitted that Lee signed the application in blank, and that he filled it out; that he told Lee that the application did not prevent the policy going into effect that day at twelve o'clock. Hunt testified that he only had a verbal agreement with Marshall as to his agency on September 5th, and did not have a written agreement as agent until the 13th of October; this agreement being offered in evidence.

Hunt said Lee signed the application; that he made no statement to the latter as to the contents thereof, nor did he ask him to read it. He said that Lee had an opportunity to read it if he wanted to, but that the application had nothing to do with the policy. He knew Lee was preparing to get a policy before leaving on a trip; he thought from the Travelers' Accident Insurance Company.

The policy of insurance, delivered after the accident occurred, was offered in evidence by the insurer. Depositions of two of the officers were offered in evidence, as well as the agreement between Hunt, the agent, and the

insurer, subsequently entered into, and effective September 13, 1929, by which agreement Hunt was named as agent in several counties in Mississippi; was authorized to appoint such agents and solicitors and local collectors of the company in said territory, and to fix their compensation, subject to the approval of the company, to procure applications for insurance policies, write applications under the direction of the company, collect and remit the premiums, deliver policies, and other details unnecessary to mention here. Hunt had only the authority of a soliciting agent, and none to bind the company to a contract of insurance.

The following questions and answers were in the application signed in blank by the insured: "Do you apply for a policy of insurance in the American Bankers' Insurance Company based upon the following statements and represent them to be complete and true? And do you agree to accept the policy with all its provisions, the classification fixed by the company, and agree that the statements made shall be a part of any policy issued hereon? Yes. . . . Do you understand and agree that the insurance hereby applied for will not be in force until the payment of the premium in advance, and the physical delivery of the policy to you in person while you are in good health and free from injury? Yes."

The policy delivered had, among other things, the following provisions: "The copy of the application endorsed hereon is hereby made a part of this contract and the policy is issued in consideration of the statements made by the insured in the application, which the insured agrees are complete, true and material. . . ." It further provides: "The term of this policy begins at 12:00 o'clock M., standard time, on the date of delivery to and acceptance by the insured. . . ." And provides further: "This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance. . . . No statement made by the

applicant for insurance not included herein shall void the policy or be used in any legal proceeding herein. No agent has authority to change this policy or, waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company and such approval be endorsed hereon.''

The following assignments of errors as ground for reversal are urged by the appellant, the insurer: First, ''That proof of a prior or contemporaneous oral contract between the parties.'' Second, ''that Hunt was not shown to have authority to make a contract of insurance for the appellant,'' for the following reasons: ''(a) the powers possessed by agents of insurance companies are to be interpreted in accordance with the general laws of agency as in the case of the agent of any other corporation or individual. (b) There is no presumption that the agent, Hunt, had authority to bind the appellant as alleged and the burden of showing that Hunt did have authority to act for and on behalf of the appellant rested upon the appellee. (c) It was incumbent upon the appellee to show that the agent, Hunt, had either expressed or implied or ostensible authority to bind the appellant by the contract sued on.'' Third, ''there was no meeting of minds between the insurance company and the appellee,'' because ''(a) the insurance company was acting only on a written application, and the policy was not delivered until after the appellee had been insured; (b) if the contract here involved rests in parol then there was no meeting of the minds of the parties thereto in the essential elements of such a contract.''

From the statement of facts herein, the question is sharply presented: Did the agent, Hunt, have authority, real or apparent, to bind the principal, the American Bankers' Insurance Company, effective September 6th, based upon the bare statement of the agent that the policy to be issued by the company thereafter would be effective on that date, because the agent solicited the insurance,

received the premium therefor, remitted same to the company promptly, wrote the application, and thereafter delivered the policy to the insured, after the latter had received the injury upon which the action is based?

It is contended by the appellee that in equity the appellant is estopped from asserting that it is not bound by the false representations of the agent, Hunt, to the insured. It is apparent that there was no real authority in the agent to bind the insurer, so that the case must rest upon an apparent authority of the agent, if the decree of the court below is to be upheld.

It will be observed that the agent, Hunt, had only represented this company for one day; that he never made any statement to Lee about his authority; there is no testimony in the record that Lee had any facts upon which to base a belief in the apparent authority of the agent to bind the principal to a special contract of insurance. On behalf of the appellant, it quite clearly appears that Hunt was a mere soliciting agent, clothed with no authority to execute a contract of insurance in any event. Lee never made any effort to ascertain what authority was vested in Hunt, nor did he make any sort of examination of the application. The record shows that all the knowledge that the insurer had in regard to the transaction was contained in the application, which negatives the idea that there was to be a present contract of insurance binding it. Accident and health insurance is involved here. This is not a case of a fire insurance agent having authority to execute and deliver a contract of insurance against loss by fire, thereto authorized by the principal. It is quite clear that Lee was informed that an application was necessary, that he expected to have a policy evidencing the contract, and that, in such situation, he made no sort of investigation or inquiry.

"The burden of proof is upon him who asserts it to show either a direct authorization of the agent, or by

proving such facts or circumstances, or such a course of conduct, as by implication it can be presumed that the agent was acting within the real or apparent scope of his authority. If one invests another with real authority he is bound by reason of the actual power conferred. If, however, he clothes him with apparent authority, he is bound, because he has induced others to deal with him as an agent. The one rests upon a fact; the other upon a supposed fact. But before the alleged principal is precluded from denying the existence of the supposed fact, it is necessary that the other party should show that he was misled, not by the alleged agent, but by the principal.'' See New York Life Ins. Co. v. O'Dom, 100 Miss. 219, 56 So. 379, Ann. Cas. 1914A, 583.

In Newark Fire Ins. Co. v. Russell, 142 Miss. 379, 107 So. 417, the validity of an oral contract of insurance was recognized; but it was held that such oral contract must be established by the evidence.

In the case of Germania Life Ins. Co. v. Bouldin, 100 Miss. 660, 56 So. 609, 613, this court said: ''The powers possessed by agents of insurance companies, like those of any other corporation or of an individual principal, are to be interpreted in accordance with the general law of agencies. No other or different rule is to be applied to a contract of insurance than is applied to other contracts.''

And in that case, on the question of estoppel, the court further said: ''The essence of estoppel is that the party asserting the agency was deceived by the conduct of the party against whom it is asserted, and, though fraud may be an ingredient of the case, it is not essential. The principal need not authorize the agent to practice a fraud on third parties, yet if he authorize his agent to transact the business with a third party, and in so doing the agent practices the fraud on the party, the principal is liable. The estoppel may be allowed on the score of negligent fault of the principal. Where one of two innocent per-

sons must suffer loss, the loss will be visited on him whose conduct brought about the situation.''

If we should hold in the instant case that the insurer herein is equitably estopped to deny the oral contract of insurance asserted herein, it would be tantamount to saying that the company, because of the fact that it selected an agent to solicit business, would be bound to the extent of any representation as to the insurance contract it was then proposing to make, regardless of its own scope of business.

No one would contend that, if a wholesale dealer in flour hired a salesman to solicit orders for flour, the principal would be bound until it had received and accepted the order. It is true that both parties herein were misled—the insured by the statement of Hunt that the insurance was effective at once; and the insurer by the application, which showed that the insured accepted the contract, to take effect in accordance with its usual contract, the main feature of which in the present instance is the delivery of the policy to the insured while in good health.

In the case of Continental Casualty Co. v. Hall, 118 Miss. 871, 80 So. 335, this court held that ''a soliciting agent for a life insurance company is without authority to write policies or bind the company by its terms or to alter them, and is merely a special agent, whose authority is entirely dissimilar from that of fire insurance agents,'' who write the policies for their companies; and the court there stated that ''it is also contended by the appellee that the soliciting agent represented to him that this special rider would make the health insurance effective upon the issuance of the policy.'' The court further said, with reference to this kind of agent: ''He had no authority whatever to alter or change the terms of the insurance contract or to bind the company by any representations made by him. This court has repeatedly held this kind of agent to be merely

a special agent who has no authority to change or alter the terms of the insurance policies.''

It would indeed be a harsh rule to bind a principal to a contract entirely different from that which it was accustomed to make, and to charge it with notice of something that it did not authorize, which was not contemplated in its course of business, which it never ratified, in fact, never had any knowledge thereof. In the instant case, we have a transaction entirely dependent upon the conduct of another, beyond the scope of his actual authority, and without proof of such conduct as implied apparent authority. In this case the burden of showing some reasonable basis for the belief that Lee had a right to think that the agent, Hunt, had apparent authority to make a special contract of insurance must be met.

''No presumption exists, however, that the company's agents have authority to make a parol contract to insure; such authority must be proved affirmatively. Of course a parol contract to issue or renew a policy must be clearly established.'' See 2 Couch, Cyc. of Ins. Law, 1929, 1586; also, Joyce on Insurance, vol. 2, p. 1298, section 525; 2 Couch, Cyc. of Ins. Law, 1485; 32 C. J. 1067, 1116.

Appellee suggests to the court that section 5196, Code of 1930, defining who is an agent in this state, might be applied to the case at bar. However, he realizes that this court has said, in effect, that this statute does not alter the general law of agency, and has always recognized the distinction between a special agent, or merely soliciting agent, and an agent clothed with such authority as by implication the principal was bound by his acts. The O'Dom and Hall cases were decided in the light of the substance of this statute, which, so far as material here, has been in force in this state since the Code of 1892. See section 2327, Code 1892.

Counsel for appellee are in error when they say that the agent testified that he had authority to make the contract.

We think it unnecessary to discuss the case of Mass. Bonding & Ins. Co. v. Vance, 74 Okla. 261, 180 Pac. 693, 15 A. L. R. 981, from the supreme court of Oklahoma, for the reason that we are in agreement with the fundamental principles of law announced in that case, but cannot agree therewith as to its application of facts on the question of apparent authority of the agent.

It is not shown in the instant case that the agent had ever written any other insurance for this company, or that they had him act in any capacity other than as a mere soliciting agent; and the bare fact of a special agent soliciting the contract is not of itself sufficient to meet the burden of proof placed upon the insured by the law, to show that the principal had held this agent out as having authority to make for it a binding contract of insurance; but the transaction here involved is one in which Lee, as a business man of intelligence, knew or ought to have known that an application must be sent to the principal, and that the principal reserved some rights as to when and how it should become liable. He was too credulous; he did not even take a receipt for the money he paid, and made no sort of inquiry or investigation.

There is nothing in this record to lead a reasonable man to believe that Hunt was the alter ego of the insurance company. The recovery in this case cannot be upheld.

Reversed, and judgment here for appellant.