SAFETY DRIVERS INSURANCE CORP. *v.* WAGGENER.

Dec. 14, 1953

No. 39015 46 Adv. S. 78 68 So. 2d 452

*Wallace & Greaves,* Gulfport, for appellant.

374

*Morse & Morse,* Gulfport, for appellee.

LEE, J.

Mrs. Irene Vance Waggener sued Safety Drivers Insurance Corporation, in the county court of Harrison County, to recover certain benefits, which she claimed,

under a policy issued to her by the defendant. By agreement, the cause was heard by the county judge without the intervention of a jury. At the conclusion of the trial, he found for the plaintiff and awarded judgment accordingly. On appeal to the circuit court, before submission, Mrs. Waggener died, and the cause was revived in the name of Charles G. Waggener, Administrator of her estate. The circuit court affirmed the judgment of the county court, and the Insurance Company appealed.

██ ██ Without detailing all of the allegations of the declaration, it will suffice to say that they set up facts sufficient to charge that the defendant's agent submitted to the plaintiff an offer to issue the policy in question upon terms which she accepted; and that on October 3, 1951, when the policy was in full force and effect, she suffered an injury in an automobile accident, which entitled her to the disability and hospital benefits provided for in the policy. In response to defendant's motion therefor, plaintiff filed a bill of particulars, in which she also alleged that the injury complained of was "caused solely by reason of a collision or upset of her automobile in which she was riding at the time of the accident mentioned in her declaration * * * a child ran in front of her automobile, and the plaintiff in an attempt to prevent striking the child, drove her automobile off the road and struck a tree * * *." The burden of defendant's answer was that the policy was not approved and issued until after the accident. It denied in detail all of the allegations of the declaration, and the amendments thereto, in regard to the corporation's submission of an offer to issue the policy in question, but averred that American Automobile Owners Safety Association was a soliciting agent only and that it was necessary for plaintiff's application to be approved; that this was not done, and that the policy was not issued and dated until after the accident in question. It did not deny the alle-

gations as to the cause of the injury, as quoted above. The only reference thereto in the answer was as follows: "Answering Paragraph III of the declaration, as amended, the defendant admits that, on the 3rd day of October, 1951, the plaintiff sustained the injury complained of in the declaration, but denies that the plaintiff's said injury, and her disability, if any, in consequence thereof is within the terms of, or is covered by, any contract of insurance between her and the defendant, and the defendant further denies that any disability sustained by the plaintiff, or any medical, surgical or hospital bills incurred by the plaintiff, in consequence of her said injury, are within the terms of, or are covered by, any contract of insurance between her and the defendant."

The proof, oral and documentary, was to this effect: On September 15, 1951, Mrs. Waggener received through the United States mails a form letter from American Automobile Owners Safety Association, 1007 Main Street, Kansas City, Missouri, signed by Maurice E. Benson, Vice-President, soliciting her to purchase an Automobile Owner's Accident and Hospital policy to be issued by Safety Drivers Insurance Corporation, which would, for a premium of $5, afford certain benefits in case of disability or hospitalization, as therein mentioned. Enclosed with the letter was a temporary membership card and an application blank. The letter informed her that, as a member, she "will be entitled to all the benefits and to apply through the Association for an Automobile Owner's Accident and Hospital Policy issued by the SAFETY DRIVERS INSURANCE CORPORATION." The only requirements of her, as a member, were that she had not had an automobile accident during the past 12 months and the payment of $5 to cover a period of 6 months. It was said that "OUR PLAN, instead of refunding at the end of the year for careful driving, rewards you in advance with an Automobile Owner's

Accident and Hospital Policy at the low premium rate of $5.00 for every six months' insurance." As she had not had an automobile accident in the past 12 months, the Association considered her a careful driver and eligible for membership. She was urged to: "MAIL $5.00 TODAY for six months' insurance with the enclosed application. Your Policy and Membership will be mailed to you immediately upon approval. Examine it for 10 days. If you are not satisfied, simply return the Policy and your money will be refunded, and no questions asked." There was this further statement, near the bottom of the letter, underscored in raised type: "THIS POLICY IS AVAILABLE TO YOU AT $5.00 FOR SIX MONTHS' INSURANCE, PROVIDED YOUR APPLICATION REACHES OUR OFFICE NOT LATER THAN OCTOBER 5, 1951."

The application blank was addressed to Safety Drivers Insurance Corporation, 1007 Main Street, Kansas City, Missouri. It said: "I enclose remittance as checked below for an Automobile Owner's Accident and Hospital Policy. I have not had an automobile accident in the past 12 months. $5 for 6 (six) months' insurance. $10 for 12 months' insurance (one year)." The above form was followed by spaces for the signing of name, age, address and the name of the beneficiary. Below these spaces was the following: "I understand if I am not satisfied with the policy upon receipt of it, I will return it, and my money will be promptly refunded without any questions. Make all checks or money orders payable to Safety Drivers Insurance Corporation." On the back of the application, the various benefits were stated, and information was given as to how claims would be paid.

The temporary membership card certified, under the name of the Association by Maurice E. Benson, that "The bearer, whose name appears on the reverse side hereof, if in possession of our official receipt, is a holder

of an Automobile Owner's Accident and Hospital policy, issued by Safety Drivers Insurance Corporation, which pays'', and it then enumerated the benefits.

Mrs. Waggener filled out and signed the application, and, on September 26, 1951, mailed it, together with her check No. 141 on Hancock Bank of Gulfport, Mississippi, in the sum of $5, payable to Safety Drivers Insurance Corporation to the named address. The corporation received the application and check, and on or prior to October 2, 1951, deposited the check, and, in due course upon presentation at the bank, it was paid.

On the afternoon of October 3, 1951, Mrs. Waggener, while returning home in her automobile from a doctor's office, had an accident. Her brakes gave way on a bad curve, and, in order to avoid striking some children, she turned into the curb. She threw her hand out and her arm struck a tree. The result of the collision was that she sustained a compound fracture of her arm, which necessitated hospitalization. The arm was kept in a cast until May 19 following and she was thereby prevented from performing her duties as a stenographer or secretary during that period.

About October 18, 1951, on her return home from the hospital, Mrs. Waggener found in her mail a letter from the corporation, which contained her policy and receipt. Upon examination, she discovered that both were dated October 5, 1951. The policy was signed by Maurice E. Benson, President. When she inquired the reason for that date on the policy, an accredited representative advised her in writing that the corporation had four issue dates during each month, namely, 5, 12, 19 and 26, and that inasmuch as her check was dated September 26 and was not received until a day or two later, the policy was given the October 5th date.

Appellant contends here that its agent had only limited authority, that is, to solicit applications and collect premiums, and it was not authorized to consummate

a contract of insurance, which would be binding before the issuance of the policy; that appellee failed to prove that the agent possessed unlimited authority; that the policy in this case was not dated and approved until October 5, subsequent to Mrs. Waggener's injury, and therefore, was not in force and effect at the time; that the injury resulted from an accident outside the coverage of the policy; and that the judgment, in amount, is excessive.

But the proof showed that the address of both the appellant and its agent was 1007 Main Street, Kansas City, Missouri. The Vice-President of the agent and the President of appellant was Maurice E. Benson, one and the same person. In his form letter, he referred to "Our Plan." He signed and executed the policy. As President of the appellant, he should have known the powers and limitations of the corporation's agents; and as Vice-President of the agent, he should have known the powers and limitations imposed by the corporation. As President, he knew, without equivocation, what he, as Vice-President, had represented. Through him, both principal and agent had full knowledge of the proffered insurance contract. Certainly mere soliciting agents do not formulate plans of insurance.

The effect of what transpired in this case was that appellant, or its agent with its knowledge and consent, offered, for a premium of $5, to deliver to appellee, to whom it had presented a temporary membership card, a policy which would protect against certain hazards for a period of 6 months, provided appellee had not had an automobile accident in the past 12 months. This was an offer which was certain. 17 C. J. S., Contracts, Pars. a and c Section 36, pages 363-4.

The offer was not that the insurance would take effect on October 5, but that it was available to her "provided your application reaches our office not later than October 5, 1951." By dispatching the application, showing

that she had not had an automobile accident in the past 12 months, and enclosing her check for $5, Mrs. Waggener accepted the offer. A binding contract was thereby consummated. Murphree v. National Life & Accident Ins. Co., 168 Miss. 67, 150 So. 534; 17 C. J. S., Contracts, Section 39, page 371.

By depositing the check, the corporation in fact acknowledged that Mrs. Waggener had complied with all of the terms, and that her application had been finally approved. It was willing to accept checks, for in the application, it gave directions to ''make all checks or money orders payable to'' it. And so, instead of dating the policy as of the time of Mrs. Waggener's acceptance or of its own final approval, the corporation chose to date it as of October 5, 1951, out of mere convenience to itself. But the convenience of the corporation did not relieve it from the effect of its solemn contract.

In the old case of Tayloe v. Insurance Co., 13 L. Ed. 187, 9 How. 391, the agent of the insurance company, on December 2, 1844, wrote Tayloe a letter, advising the terms under which the fire insurance policy would be written, adding ''Should you desire to effect the insurance, send me your check payable to my order for $57, and the business is concluded.'' On account of misdirection, the letter did not reach Tayloe until the 20th of the month. The next day he mailed a letter, assenting to the terms, and enclosed his check for the amount of the premium. This letter was not received by the agent until the 31st. In the meantime, on the 22nd of the month, a part of the building was destroyed by fire, and the company refused to issue the policy or pay the loss on the ground that the acceptance came too late. In reversing the judgment in favor of the insurance company and holding it liable, the court said: ''On the acceptance of the terms proposed, transmitted by due course of mail to the company, the minds of both parties have met on the subject, in the mode contemplated

at the time of entering upon the negotiation, and the contract becomes complete. The party to whom the proposal is addressed has a right to regard it as intended as a continuing offer until it shall have reached him, and shall be in due time accepted or rejected.'' Making use of the old rhetorical rule, namely, for trenchant assertion use interrogation, the court stated the rationale for its conclusion as follows: ''For why make the offer, unless intended that an assent to its terms should bind them? And why require any further assent on their part, after an unconditional acceptance by the party to whom it is addressed?''

Full knowledge by both principal and agent 'of the terms of the proffered contract distinguishes this case from those cited in appellant's brief, which involved the question of limited authority, and among which are American Bankers Ins. Co. v. Lee, 161 Miss. 85, 134 So. 836, and Cue Oil Co. v. Fornea Oil Co., 208 Miss. 810, 45 So. 2d 597.

As stated, appellant also contends that the proof as to the accident did not bring this claim within the insuring clause, the material part of which is as follows: ''Against loss from accidental bodily injury sustained while driving or riding within any automobile, truck, or bus for business or pleasure during the term of this policy, provided such injuries are caused solely by reason of collision or upset of an automobile, truck or bus.''

A quotation from the bill of particulars, as to how the accident occurred, was set out in a reference to the pleadings in the second paragraph of this opinion. The absence of a denial thereof in the answer, except for the conclusion of the pleader, was also pointed out. The allegations of the declaration and of the bill of particulars were sufficient to show an accident within the meaning of the insuring clause. Since no issue thereon was tendered by a proper denial, proof in that

regard was unnecessary. Such allegations were entitled to be taken as admitted. Par. 2 (a) Section 1475.5, Code 1942 Cumulative Supplement.

 The evidence was sufficient to show that Mrs. Waggener was totally disabled for about 7½ months, for which she was entitled to recover at the rate of $150 a month. National Life & Accident Ins. Co. v. King, 102 Miss. 470, 59 So. 807; Lipnick v. N. Y. Life Ins. Co., 211 Miss. 833, 52 So. 2d 916. And since the judgment was for $1,167, the allowance for hospital expenses did not exceed $6 a day for 7 days. Hence, the amount of the judgment did not exceed the value of the benefits to which she was entitled.

Affirmed.

*Roberds, P. J.,* and *Hall, Kyle* and *Holmes, JJ.,* concur.