206 So.2d 838 (1968)
AMERICAN CASUALTY COMPANY, Appellant,
v.
John J. WHITEHEAD, Jr., Appellee.
No. 44679.
Supreme Court of Mississippi.
February 5, 1968.
P.D. Greaves, Herbert J. Stelly, Sr., Gulfport, for appellant.
Cumbest, Cumbest, O'Barr & Shaddock, Pascagoula, for appellee.
BRADY, Justice:
The appellee obtained a verdict in the sum of $4,680.72 which represented claims alleged to be due under an insurance policy issued by appellant to the appellee. From that judgment appellant prosecutes this appeal. The basic facts revealed in the record are as follows.
On April 17, 1961, an application was made by John J. Whitehead, Jr. to the American Casualty Company of Reading, Pennsylvania, through its resident agent, Mr. D.R. Peele. The application was for a Protector Major Medical Expense Policy, the effective date of which was May 1, 1961. The appellee presented his check in the sum of $53.32 to appellant's agent, D.R. Peele, on April 18, 1961, in payment of the semi-annual, premium. This check was made payable to Peele Insurance Agency and was endorsed by D.R. Peele Insurance and Real Estate, and cashed.
The record discloses that the appellee was engaged in the construction business and in gasoline and oil business, and that appellee had numerous policies of insurance protecting his interests, which he secured from various agents residing in Pascagoula, Mississippi. The record further discloses that both Mr. D.R. Peele and his wife, Laverne Peele, notified the appellee when the premiums were due on the various policies which he carried with appellant, and that appellee paid the premiums on the policies either by check or cash by delivering the same to Mr. or Mrs. Peele. The *839 record further discloses that the appellee was never notified by the American Casualty Company that the policy in question had lapsed prior to the time demand was made on it for the payment of benefits thereunder.
While operating a tractor on May 27, 1962, the appellee was injured when the tractor turned over on him. As a result thereof he was in the Singing River Hospital in Pascagoula for a period of approximately thirty-four days. Mr. Lester L. Tuck, the administrator of the Singing River Hospital, telegraphed the appellant apparently a short time prior to June 25, 1962, inquiring whether or not there was a policy covering the appellee for injuries he received. On June 25, 1962, the appellant wrote the following letter to the hospital:
 Singing River Hospital
 Pascagoula, Mississippi
 Re. John J. Whitehead
 MME 27281
Gentlemen:
We have your telegram about this insured's admission there. We understand it due to an accident.

Mr. Whitehead's policy with us is a Major Medical contract providing up to $10,000 for any one accident. The policy deducts the first $500 of expenses involved and then pays the insured 80% of the next expense involved up to the policy maximum. There is no limit as far as room and board and hospital extras are concerned, but naturally they are subject to the other provisions of the policy.
 Cordially,
 I.F. Casey, Jr.
 A. & H. Claims Supervisor
(Emphasis added)
The Singing River Hospital permitted the appellant to remain there and receive treatment, the hospital expenses amounting to $2,339. Dr. Herbert H. Robinson's bill for professional services amounted to $2,500. Dr. W.J. Weatherford's bill amounted to $500, and the bill for the services of three nurses daily amounted to $1,020, making a total of hospital, doctors' and nurses' bills of $6,359. There was a $500 deductible clause and the maximum amount recoverable by appellee was 80%, so that $4,687.20 was the maximum amount which appellee could recover.
The record discloses that the appellee was never notified by appellant that his policy had lapsed prior to the time demand was made on it. Moreover, the record fails to disclose that appellant ever notified appellee that it had terminated Peele's agency. The record reveals the pertinent information that on March 22, 1962, the following letter was written by C.W. Blackstock, resident manager of the appellant company:
 Hon. Walter Dell Davis
 Commissioner of Insurance
 State of Mississippi
 Jackson, Mississippi
 Re: Peele Insurance Agency
 Pascagoula, Mississippi
Dear Mr. Davis:
In checking our files, we notice that we failed to notify you regarding our position in the above captioned agency.
We picked up our Agency Agreement and/or contract, plus all supplies from this Agency and terminated the agency on June 8, 1961. This automatically terminated this agent's ability to bind or write any business with the American Casualty Company. Since that time, we merely have been trying to work off the business that we had on the books and collect unpaid balances.
Certainly appreciate your marking your records accordingly.
 Kindest personal regards
 Yours very truly,
 C.W. Blackstock
 Resident Manager
*840 The Singing River Hospital made demands upon appellant for payment of its charges for hospitalization of appellee. The record indicates that on December 19, 1962, Mr. Casey, Claims Supervisor, called Mr. Percy T. Miller, Business Manager of the Singing River Hospital, and stated that the payment of the claim was not being made "because Mr. Whitehead's insurance premiums were not mailed into the company."
The record discloses that a short time subsequent to the discharge of appellee from the hospital he made repeated demands by telephone and through personal contact with company agents seeking to obtain the benefits to which he was entitled under the policy. It is clear that subsequent to the demand made by both the Singing River Hospital and the appellee, the appellant declared the policy to have been terminated on November 1, 1961. As reflected in the brief of appellant and in the record, there is a conflict as to why the policy was terminated. Appellant in its brief takes the position that the policy was terminated because of a failure on the part of appellee to pay the premiums, while the record indicates it was because the representation of them by Peele's agency was terminated. Appellant notified Mr. Miller, business manager of the hospital, that the appellant would not pay any benefits because they had not received the premiums; but, on direct examination, Mr. Richard B. Moyer, employee of the Claims Mutual National American Group, of which the appellant is a member, was introduced by the appellant and testified as follows:
Q. Did that policy stay in force and effect or not.
A. No sir.
Q. Why?
A. The policy was terminated on November 1st, 1961.
Q. For what reason?
A. Due to the fact that the agent no longer represented us.
Q. The Peele Agency?
A. Peele Insurance Agency no longer represented us.
The record further discloses that subsequent to the payment of the first check on April 18, 1961, the appellee, on July 30, 1962, presented Peele's Insurance Agency with a check in the sum of $103.36 marked on the face thereof, "Premium Payments." The record shows that on November 20, 1961, the appellee made a check payable to the order of Peele Insurance Agency in the amount of $86.26. This check was for an amount in excess of $25.84 per quarter and was for a three quarters' period because, unknown to the appellee, the appellant had increased, with authority, his premium cost. The record discloses that the premiums were term payments and that the term of three months amounted to $86.26 so that the first check in the amount of $103.36 was for a year's time. Appellant on cross-examination asked appellee if any payments had been made since July 30, 1962. The record discloses that a payment was made on November 24, 1962, to the order of L. Peele (who was Laverne Peele, the wife of agent R.D. Peele) for the sum of $303.
There is only one material assignment of error filed in this case, which is, that the judgment of the lower court is contrary to the law and evidence and is not supported by the law and evidence. Stated otherwise, there are two issues involved in the determination of this cause. First, was Peele's Insurance Agency without authority to represent or bind the appellant due to the fact that appellant had terminated its relationship with the agency as of July 17, 1961, and second, had the policy expired prior to May 27, 1962, the date on which appellee was injured, because of the failure of appellee to pay and maintain the premiums which were due?
*841 At the outset, as reflected in the record, July 17, 1961, was not the date upon which the appellant claims the policy was terminated. In appellant's letter to Hon. Walter Dell Davis, Insurance Commissioner, the appellant unequivocally stated that the policy was terminated on July 8, 1961. Appellant endeavors to explain this discrepancy by saying it took that length of time to conclude the termination of the agency. The astute trial judge held that the American Casualty Company had not terminated its relationship with the Peele Insurance Agency as of May 27, 1962, the date that the appellee was injured, and that the policy had not expired due to the failure of appellee to pay and maintain the premiums as they became due. The appellant urges that the verdict of the lower court is contrary to the overwhelming weight of the evidence which of course relates to the two issues above designated.
We have carefully reviewed the record in this case and the briefs of counsel. The proof in this record shows that checks were paid by the appellee to the D.R. Peele Insurance Agency on April 18, 1961, putting into effect the policy which was issued; that the term payment was for $25.84 per quarter; and that on November 20, 1961, a check in the amount of $86.26 was paid to the Peele Insurance Agency continuing the policy for three terms at a slightly higher rate; that a check was issued to Peele's Insurance Agency on July 30, 1962, for the sum of $103.36; and finally on November 24, 1962, a check was paid to L. Peele for the sum of $303. The record discloses that no notice was ever given to the appellee that his policy had lapsed because of his failure to pay the premiums. There was no notice given by appellant to appellee that his policy was terminated or that the agency of D.R. Peele had been terminated.
It is difficult to understand how an appellant with the efficient management and magnitude of business which this appellant apparently has would fail to notify a policyholder that his policy had lapsed because of his failure to pay a premium. This was not, however, the basic grounds upon which appellant predicated his nonliability. Mr. Moyer, an officer of the Claims Mutual National American Group, testified that the policy was not in force and effect on the date of appellee's injuries, "due to the fact that the agent no longer represented us ... Peele Insurance Agency no longer represented us," which fact was never communicated to the appellee. This information was not given to the Insurance Commissioner of Mississippi until March 22, 1962. This is in sharp conflict with the letter of June 25, 1962, written by Mr. I.F. Casey, Jr., A. & H. Claims Supervisor, to the Singing River Hospital in answer to a telegram from Mr. Lester L. Tuck categorically stating that appellee's policy with them was a major medical contract allowing up to $10,000 for any other accident, with $500 deductible expense, paying the insured 80% of the net expenses incurred up to the policy maximum. Mr. Moyer testified that the policy terminated on July 17, 1961, but no notice was given the insurance commissioner until March 22, 1962, almost nine months after the agency was claimed to have been terminated. See Aetna Life Ins. Co. v. Roberts, 174 Miss. 278, 164 So. 311 (1935).
Under the controlling sections of Mississippi Code 1942 Annotated, particularly section 5706, and under decisions of this Court, the proof in this case is sufficient to constitute D.R. Peele the agent of the appellant. Section 5706 provides in part as follows:
Agent defined  fraudulent representation  penalty.
Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance, or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall *842 examine or inspect any risk, or receive, collect or transmit any premium of insurance, or make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance, for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance, or request, or by the employment of the insurance company, or of, or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract * * *.
We pointed out in American Bankers' Insurance Company v. Lee, 161 Miss. 85, 134 So. 836 (1931) that the general law of agency is governed with respect to powers of insurance agents and we held as follows, to-wit:
"The burden of proof is upon him who asserts it to show either a direct authorization of the agent, or by proving such facts or circumstances, or such a course of conduct, as by implication it can be presumed that the agent was acting within the real or apparent scope of his authority. If one invests another with real authority he is bound by reason of the actual power conferred. If, however, he clothes him with apparent authority, he is bound, because he has induced others to deal with him as an agent. The one rests upon a fact; the other upon a supposed fact. * * *"
* * * * * *
In the case of Germania Life Ins. Co. v. Bouldin, 100 Miss. 660, 56 So. 609, 613, this court said: "The powers possessed by agents of insurance companies, like those of any other corporation, or of an individual principal, are to be interpreted in accordance with the general law of agencies. No other or different rule is to be applied to a contract of insurance than is applied to other contracts."
And in that case, on the question of estoppel, the court further said: The essence of estoppel is that the party asserting the agency was deceived by the conduct of the party against whom it is asserted, and, though fraud may be an ingredient of the case, it is not essential. The principal need not authorize the agent to practice a fraud on third parties, yet if he authorize his agent to transact the business with a third party, and in so doing the agent practices the fraud on the party, the principal is liable. The estoppel may be allowed on the score of negligent fault of the principal. Where one of two innocent persons must suffer loss, the loss will be visited on him whose conduct brought about the situation." (Id. at 103-105, 134 So. at 839.)
Likewise, in the case of Steen v. Andrews, 223 Miss. 694, 78 So.2d 881 (1955), this Court held as follows:
The power of an agent to bind his principal is not limited to the authority actually conferred upon the agent, but the principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have. The agent's authority as to those with whom he deals is what it reasonably apppears to be. So far as third persons are concerned, the apparent powers of an agent are his real powers. 2 C.J.S. Agency §§ 95, 96. This rule is based upon the doctrine of estoppel. A principal, having clothed his agent with the semblance of authority, will not be permitted, after others have been led to act in reliance of the appearances thus produced, to deny, to the prejudice of such others, what he has theretofore *843 tacitly affirmed as to the agent's powers. 2 C.J.S. Agency § 96(c). There are three essential elements to apparent authority: (1) Acts or conduct of the principal; (2) reliance thereon by a third person, and (3) a change of position by the third person to his detriment. All must concur to create such authority. (Id. at 697-698, 78 So.2d at 883.)
The proof in this case conclusively shows that the Peele Insurance Agency accepted the premiums from the appellee. The record discloses that the appellant wholly failed to notify the appellee that it had terminated the agency. It is obvious that the appellee had borne the expenses of paying the premiums, and under the rule set forth in Steen v. Andrews, supra, the facts in the case at bar are sufficient to hold the appellant liable for the claims of the appellee arising out of his injuries.
In 44 C.J.S. Insurance 148, at 813 (1945) it is stated as follows:

Notice of termination. A general insurance agency is presumed to continue until insured or other parties in interest have been notified of its termination; and such agent may bind the company by his further acts until notice of the revocation of his authority is brought home to persons who have dealt with him. * * *
It follows, therefore, that, in harmony with a great majority of the decisions, the appellant was bound by the acts of Peele Insurance Agency for the reason that they did not notify the appellee that the agency relationship between the appellant and Peele Insurance Agency had been terminated. It is a singular fact that Mr. Moyer, officer of the appellant, gave as his reasons for the termination of the policy the fact that Mr. Peele no longer represented his company. He did not maintain that the policy was terminated because of failure to pay the premiums. The proof is sufficient, therefore, to establish the fact that Peele Insurance Agency was initially clothed with the authority to collect premiums from the appellee. The proof is undisputed that the appellee had a great volume of business which he shared with other agents in his town and that he relied on the agents to notify him when his premiums became due and to see that his insurance policies remained in effect. In support of that reliance he paid all premiums requested of him by the agents. The proof shows that he did not even have any knowledge that there had been a premium increase on the policy in question and that he paid Mr. Peele whatever premium amounts Mr. Peele notified him were due. It is undisputed that no notice was given the appellee of the termination of Mr. Peele's agency or that appellant was asserting that the policy in question had lapsed for failure to pay premiums. The proof does not show in this case that appellee had any knowledge that Peele Insurance Agency was not qualified to do business as customary on May 27, 1962, the date he was injured, but shows that it was not until in September 1962, some four months after his injury, that he had notice of the change in hands of the agency. It is undisputed that Mr. Eselin "inherited" the business of appellant in September 1962, which of course was subsequent to the time the appellee sustained his injuries.
We find in 29 Am.Jur. Insurance section 144 (1960) the following statement:
Notice of Termination of Agency.  It is the duty of an insurance company to notify insured persons who have dealt with their agent as the representative of the company of the termination of his authority. If it fails to do so, it is bound by his acts if such a person continues to deal with him as the representative of the company, in ignorance of the termination of the agency * * *.
In the case of Tucker v. American Aviation & General Insurance Company, 198 Tenn. 160, 278 S.W.2d 677 (1955), that court held that a statute providing for filing with the Insurance Commissioner a list of all the agents whose certificates of authority have been cancelled or surrendered during the *844 preceding year did not render cancellation of an agency.
We fail to find merit in the contention that the proof fails to show that Mrs. Peele was not a licensed agent at the time she was collecting premiums. In Bankers Fire & Marine Insurance Company v. Dungan, 240 Miss. 691, 128 So.2d 544 (1961), we said:
A general agent of an insurance company ordinarily may employ subagents, clerks, and other employees to carry on the business of the agency. Their acts within the scope of their authority are binding on an insurer. 44 C.J.S. Insurance § 153; Paramount Fire Ins. Co. v. Anderson, 1951, 211 Miss. 372, 51 So.2d 763; Aetna Ins. Co. v. Lester, 1934, 170 Miss. 353, 154 So. 706. * * * (Id. at 698, 128 So.2d at 546-547.)
The appellee stated that he had been paying the premiums all along to either Mr. or Mrs. Peele, the latter of whom was certainly acting within the scope of her employment in accepting them.
Turning to the second issue urged by appellant, that the trial court was in error in holding as it did for the reason that the policy was not in effect on the date of the accident, the record discloses that the payment of the premiums as evidenced by the checks offered in evidence shows that the policy was in effect insofar as the payment of premiums was concerned. It is to be noted that although Mr. Moyer testified that the appellant never collected any money for premiums from the appellee or Peele Insurance Agency on the policy involved, and although they stated that the appellant did not collect one cent, he did not deny that the policy was in effect through November 1, 1961.
The case does not present the issue of whether or not the funds received by Peele Insurance Agency were ever delivered to the appellant. That question is not presented in the case at bar and is concerned in a wholly different lawsuit.
The statements made by appellee that he paid all premiums by check or in cash when they became due, and the checks which were introduced in this case evidencing the payment of the premiums, are ample evidence upon which the trial court could hold that the policy was in full force and effect insofar as the proper payment of premiums due is concerned. It was within the sound discretion of the trial judge, a jury having been waived, to pass upon the credibility of this testimony and evidence, and we conclude that the judgment of the trial court is not against the overwhelming weight of the testimony.
The proof is sufficient to show that the appellee paid the premiums on the policy as directed by appellant's agent, Mr. Peele. Mr. Peele did not at any time notify the appellee that his policy had terminated because of lack of payments. Likewise, appellant did not notify appellee that his policies had lapsed because of failure to pay premiums, or that Mr. Peele's agency had been terminated. The proof is to the contrary. The appellant acknowledged to the Singing River Hospital that the appellee was covered under the policy at the time of the accident and injuries. This is strengthened by the fact that no notice was ever given the appellee by the appellant that his policy had lapsed until he made demand upon it for the payment of claims which arose as a result of his injury of May 27, 1962.
For these reasons, the judgment of the trial court is affirmed.
Affirmed.
ETHRIDGE, C.J., and RODGERS, JONES and INZER, JJ., concur.