# GERMANIA LIFE INSURANCE Co. *v.* M. L. BOULDIN.

[56 South. 609.]

1. PAROL EVIDENCE. *Written contract. Life insurance. Knowledge of terms. Principal and agent. Presumptions.*

Where a life insurance policy is delivered and accepted, in the absence of fraud, the policy alone speaks the contract between the parties, and any representations or statements made outside of the policy, either verbal or written, are inadmissible to show the terms of the contract.

2. LIFE INSURANCE. *Terms of policy. Equitable relief.*

Where a life insurance company forwarded a policy to its agent for delivery to insured, who accepted the policy without notice that a rider has been placed thereon by the agent without authority from the company to do so, and shortly before the expiration of the tontine period insured demanded settlement in accordance with terms of the rider, while the company relied on the printed terms of the policy and showed that the rider had been placed on the policy by its agent without authority. *Held,* that in a bill in equity filed by the insured to compel the company to perform the contract as disclosed by the rider, or for a decree against the insurer for all the premiums paid, the court could not enter a decree for insured for all the premiums, since insured suing in equity must do equity, and it would be inequitable to require the company to refund all the premiums, while it was bound for the full amount of the policy in case insured had died during the life of the policy. The insured should pay for such protection afforded him during the life of the policy.

3. INSURANCE POLICY. *Knowledge of terms. Presumptions.*

In the absence of any fraud in the making of an insurance policy, the insured must be held to a knowledge of the conditions of his policy as he would be in the case of any other contract or agreement.

4. SAME.

Although a party may not have read the provisions of his policy, and relied in ignorance of them upon the express representations

of the agent, this fact cannot help him, when the policy has actually been placed in his hands and retained by him. It is his business to know the contents of the contract.

5. Principal and Agent. *Powers.*

The agent of an insurance company, or of any other corporation or individual, possesses such powers only as have been conferred verbally or by written instrument of authorization by his principal, or such as third persons had a right to assume that he possessed under the circumstances of each particular case.

6. Principal and Agent. *Unauthorized act of agent. Estoppel.*

Where an agent, with the knowledge and consent of the principal, holds himself out to the world as having certain powers and transacts business with third parties who are deceived by the conduct of such agent into believing that he has such power, the principal is estopped from denying the powers of such agent.

7. Same.

Such estoppel may be allowed on the score of negligent fault of the principal. Where one of two innocent persons must suffer loss, the loss will be visited on him whose conduct brought about the situation.

8. Contracts. *Wrongful acts of agents.*

Where a life insurance company sent a policy to its agent with instructions to deliver it to insured, and the agent placed a rider on the policy and then delivered it to the insured, who accepted it under the belief that the rider had been placed thereon by the company itself, insured had a right to hold the company in accordance with the terms of the rider.

9. Insurance Contracts. *Construction.*

Insurance policies are always construed most strongly against the insurance company and most favorably for the assured.

Appeal from the chancery court of Coahoma county.

Hon. M. E. Denton, Chancellor.

Suit by M. J. Bouldin against the Germania Life Insurance Company. From a decree for complainant, defendant appeals.

The facts are fully stated in the opinion of the court.

*Moody & Percy,* for appellant.

We respectfully submit, First: That the slip in question did not and does not form a part of the insurance policy in question for the reason that it was affixed to the policy by one not authorized so to do, and even if it was affixed by an authorized agent it cannot be taken nor considered as a part of the policy for the reason that it is unsigned and is in conflict with the policy, and no reference whatever is made in it to the policy nor any reference made in the policy to it. To treat it as a part of the policy under such circumstances would be in effect varying the terms of the written instrument by parol testimony.

Second: That the appellee is not entitled to reformation of the policy in question by adding to or making a part of it the options set out in the slip attached to the policy, for the reason (1) that there was no mutual mistake made because Thompson was not authorized to make contracts of insurance, but on the contrary such authority was expressly denied to him. (2) Because there was no mistake on the part of the appellee and fraud on the part of the appellant. If any fraud whatever was practiced it was the fraud of an unauthorized agent for whose acts the appellant is in no wise responsible. (3) Because the appellee accepted the policy in question without objection, and kept it in his possession without making any complaint for nearly fifteen years, for which reason he should be held in law to have acquiesced in the policy and affirmed the policy as originally executed by the company.

Third: That the policy without regard to the slip attached thereto formed a perfectly valid and binding contract between the appellee and the appellant, for the reason that such policy was accepted without objection, and if false representations were made in order to induce the acceptance of the same such false representations were made by an unauthorized agent of the com-

pany, and is, therefore, not binding on the appellant, and for the further reason that the liability of the company on the policy became fixed long before the expiration of the fifteen year period, and the risk having attached the premiums paid cannot be recovered; and, also, for the further reason that the appellee accepted the policy without complaint and retained the same in his possession, paying the premiums thereon annually for the full fifteen years period, during all of which time the appellant became bound by the terms of the policy.

Fourth: Even if the company is liable for the premiums paid, yet it is not liable for the interest thereon, for the reasons set out in this brief. *Southern Mutual Life Insurance Co.* v. *Montague,* 4 Am. St. Rep. 218; *Untemeyer* v. *Mutual Life Insurance Company,* page 4167, advance sheets of the Law Reports of State of New York; *Fennell* v. *Zimmerman,* 31 S. E. (Va.) 22; *Susquehanna Mutual Fire Insurance Co.* v. *Oberholtzer,* 32 Atl. (Penn.) 1105; 1 Cooley's Briefs on the Law of Insurance, pages 854-5; 9 Cyc. 391; *Dower* v. *Whitten,* 8 Wend. 160; *Esch Brothers* v. *Home Insurance Company,* 16 Am. St. 443; *Barnes* v. *Kella Fire Insurance Co.,* 9 Am. St. 450; *Shakman* v. *United States Credit System Company,* 53 Am. St. 920; *Hardy* v. *Lancashire Insurance Company,* 55 Am. St. 395, 11 L. R. A. (N. S.) 357, 13 L. R. A. (N. S.) 826, and note 850, 18 L. R. A. (N. S.) 729, 23 L. R. A. (N. S.) 969, 67 Pac. 443, 69 Pac. 938, 141 Fed. 877, 149 Fed. 141, 8 Am. St. 908; *Raffles* v. *Wickerhouse,* 33 L. J. Exch. 160; 9 Cyc. 435; *Cluff* v. *London R. R. Company,* L. R. 7 Exch. 26-31; *McHenry* v. *German Insurance Company,* 52 Mo. App. 94; *Massey* v. *Cotton States Life Insurance Co.,* 70 Ga. 794; *Wilson* v. *National Life Ins. Co.,* 67 N. Y. Sup. 1150; *Bostwick* v. *Mutual Life Insurance Co.,* 67 L. R. A. 705; Wald's Pollock on Contracts, page 539; *Chicago* v. *Sheddon,* 76 U. S. 54; *Haydel* v. *Mutual Reserve Insurance Company,* 104 Fed. 724; *Moffett* v. *Rochester,* 91 Fed. 28-32; *Insur-*

*ance Co.* v. *Pyle,* 58 Am. Rep. 781; *American Mutual Life Ins. Co.* v. *Bertram,* 64 L. . A. 935.

*J. W. Cutrer,* for appellee.

The appellee had a right to rely upon the representations of the agent and manager of the appellant. The relations between such a person and an insurer are confidential relations, and for that reason the appellee had a peculiar and special right to rely upon the representations of a person occupying such relationship towards him in all that related to the making and delivery of the policy of insurance.

The appellee had a right to rely upon the statements of Thompson, in fact he must have relied upon them, and Thompson acting for the appellant at the time was under duty to have exercised the utmost good faith to avoid making any material misstatement or nondisclosure of facts.

Contracts of insurance are of a special nature, said to be *uberrimae fidei,* within the rule that even an innocent misrepresentation or concealment of facts will entitle the insured to an action for reformation or rescission. The relationship between the manager of defendant and complainant was, therefore, certainly among the class of confidential relations, and the principle of the utmost good faith applies to every case where confidence is reposed and betrayed. In every case where confidence is reposed, the party in whom such confidence is reposed is held to be the utmost good faith. 9 Cyc. 409 and 458.

The appellant's manager in this case, however, and the appellant itself were guilty of more than a mere misrepresentation. Thompson was guilty of a direct fraud, and, therefore, so was the appellant.

Thompson made false representations of material facts with knowledge of their falsity and with the intent that they were to be acted upon by the appellee in retaining the contract of insurance, and lulled appellee into

quiescent retention of the policy by positive assurances, both oral and written, that the policy which he tendered was the very policy which he, the agent and manager, had represented he would receive when he first made application for insurance, saving only as to the above mentioned matters of period of payments and maturity of the policy.,

The gist of a fraudulent representation is the producing of a false impression upon the mind of the other party and if this result is actually accomplished, the means of accomplishing it are immaterial, whether by telling a deliberate and intentional falsehood, or the adoption of any other method to deceive and mislead.

Fraud may consist in a misrepresentation of the legal effect of a particular instrument or obligation. 20 Cyc. 19. An innocent party dealing with the agent and manager of an insurance company has a right to rely upon his statements with respect to a policy of insurance.

In like manner if any relation of trust exists between the parties, as by law exists in this case between the appellee and appellant and its agent and manager, so that one of them places peculiar reliance in the trustworthiness of the other, such person may rely implicitly upon representations made by the other, and this rule applies wherever the circumstances require or induce one person to repose trust and confidence in another. 20 Cyc., pp. 33-35.

It is not necessary that representations made should be acted upon immediately. If a false statement was intended to be relied upon as an inducement to a given transaction which takes place, and is consummated within a reasonable time thereafter, in the absence of proof to the contrary, it will be said that such representations had a continuing operation upon the plaintiff's mind, and he is justified throughout in acting upon them. 20 Cyc., p. 41.

The authorities all hold that the doctrine of laches does not apply until a complainant has secured full knowledge of his rights.

The present case is not one in which the complainant seeks to repudiate the contract of insurance, but one in which he seeks to have the contract construed according to his interpretation thereof, or if as written it does not embody the agreement of the parties because of the fraud of the part of the appellant, superinducing a mistake on his part, then that the contract be reformed to express the intention thus prevailing or as thus understood to be expressed and prevailing at the time of the delivery of the policy and the acceptance thereof.

The appellee promptly met all the burdens imposed upon him by the contract. He is not living, without insurance, as appellant contends, and unable to secure the insurance he desired at the rate he would have had to pay when he was defrauded by or through the act of the appellant. Appellant has suffered no loss, while appellee has. Appellee has been irreparably damaged, while the appellant through the fraud of its agent, has already reaped all the benefits which could have accrued to it within the contemplation of the parties at the time of the delivery of the contract, according to appellee's understanding thereof.

It is only in the event that neither measure of relief sought by appellee can be secured, that appellee has sought a rescission and cancellation of the contract.

There is no reason why the contract should not be reformed, because reformation can always be secured upon the discovery of a mistake entitling to reformation, unless the rights of innocent third persons have attached, or the right is barred by some statute of limitations.

Neither of such contingencies has intervened in this case to cut appellee off from relief. The action is between the original parties to the contract, and no statute

of limitations has been or can be invoked in bar of relief and appellee is certainly entitled to reformation, and if not then at least to rescission.

The doctrine of laches cannot cut appellee off from all relief under the rule as laid down by all of the authorities. There is no limitation which has attached to debar appellee from relief, even if any such limitation had been pleaded. Appellee proceeded as soon as he was advised of his rights, after consultation with counsel. The only time complainant had a right to proceed was after his honest contention for his rights had been denied by the appellant. It is shown that he relied implicitly upon the statements of the defendant's agent and general manager Thompson.

At the near approach of the maturity of the policy, he exhibited the same to several persons and stated to them the benefits which he would receive under the policy as he had always understood it, and then wrote the appellant preparatory to surrendering the same, so that he could embrace and secure to himself the advantages guaranteed to him because of his having carried the policy from the time of the delivery to maturity.

Grant that he had ever examined the policy critically, counsel and the court cannot now say with assurance that the policy does not mean with the rider attached to it as a part thereof, what appellee contends that it means. Appellee is shown to have been ignorant as is common with most of mankind, as to all matters relating to the complicated subject of life insurance and life insurance policies, while the appellant and its general manager Thompson were experts of the highest class. Because appellee relied upon appellant's written statements concerning the policy, and because an examination of the completed policy with the rider attached, which identified the rider with the policy in question as a part thereof, might, to an expert, have disclosed the fraud, can it be said as matter of law, that the doors of

a court of equity will be closed in his face; and that he will be denied a hearing and redress because he was so foolish as to trust the appellant about a matter concerning which it and its general agent and manager had special knowledge, and concerning which the appellee had no knowledge whatever?

Insurance policies are written for the protection of insurance companies, and not to protect the insured, and they are framed with all the pains and care possible, so as to obscure an insight into their full meaning by those not learned in the technical details of the science of reading and construing insurance policies, slips, riders, applications and the long train of representations and warranties which may or may not be held to be parts of such policies.

Wherefore, we insist that the complainant had a right to rely, and did rely upon the representations made to him, and that if the policy which he exhibits to the court has not been completed so as to secure to the appellee the benefits which the appellant contracted to give him, and which he expected to receive, it should be reformed and made to conform to the agreement of the parties and specific performance thereof decreed; or if it be held that rescission is the proper relief as decreed by the court below, then he is entitled to recover from the appellant the money paid, with six per cent interest thereon from the several dates of payment.

McLEAN, J., delivered the opinion of the court.

In 1892 one J. D. Thompson, a resident of Memphis, Tenn., was the agent of the Germania Life Insurance Company of New York. His jurisdiction embraced the states of Mississippi, Arkansas, and West Tennessee. The contract between Thompson and the insurance company was in writing. This contract consists of some fifteen provisions, but it is only necessary for the purpose of this case to refer to the first three provisions.

thereof. The first provision authorizes Thompson to receive applications for insurance, to accept the first premium on each and every policy of insurance which shall be issued by the insurance company upon applications obtained through said agent, and also to receive such other premiums payable to the principal within the district aforesaid. The second clause provides that the agent shall protect the insurance company for the faithful performance of his duties as agent by a bond of five thousand dollars, to be approved by the insurance company. The said agent had power, and it was his duty, to appoint local agents, with the consent of his principal, in all places within the district covered by the contract. Further, he (the agent) should superintend the local agents within the said district, visiting them from time to time for that purpose, and is to be held responsible for premiums collected by them, as well as for other of their acts as such local agents. It is further provided that it shall be the duty of the said agent to properly attend to such matters pertaining to the business of the insurance company within the district aforesaid, as may be referred to him by the company. The sixth provision provides that in the conduct of his business he (the agent) is to exactly observe the general rules which have been or may be hereafter adopted by the party of the first part for his agencies, and such instructions as may be given by the party of the first part. The deposition of the vice president of the company was taken, and he says that the company at that time had no other agent to solicit business for it in Mississippi, and that Thompson had no other authority than that contained in the contracts above mentioned.

Some time prior to May 18, 1892, the appellee was solicited by Thompson, the agent, to take out a life insurance policy with the Germania Life Insurance Company, and the appellee made written application for a three thousand dollar policy upon the twenty-payment plan.

This application was delivered by the appellee to Thompson, the agent of the company, and Thompson forwarded this application to the company at its home office in New York. On the 18th day of May, 1892, Thompson addressed and mailed to the company in New York the following letter: "Office of the Germania Life Insurance Company, New York. J. D. Thompson, General Manager Southwestern Department, Mississippi, Arkansas and West Tennessee. Memphis, May 18, 1892. Gentlemen: Some time ago I wrote making inquiry as to the disposition of the application of Mr. M. J. Bouldin for a three thousand dollar policy. Kindly advise what action was taken, and oblige. Yours respectfully, J. D. Thompson, Manager." This letter was promptly received by the company in New York, as it appears that a few days thereafter, to wit, May 23, 1892, the company answered this letter and addressed Thompson as follows: "J. D. Thompson, Esq., Manager, Memphis, Tenn."—in which the company says that it is awaiting some additional information as to this risk, but "will inform you" (Thompson) of the action of the company as soon as such information shall have been received by it. This deposition of the vice president of the company shows that during the year 1892, beginning as early as the 1st of March of that year and ending with the 1st of September, 1892, the company received letters addressed to it by Thompson upon the stationery of the company, upon which was printed or engraved the following language: "Germania Life Insurance Company of New York. J. D. Thompson, General Manager Southwestern Department, Mississippi, Arkansas and Tennessee, Memphis"—and said company, through its vice president, further testifies that 'the majority of these letters had as their letter head the following printed or engraved language: "Office of the Germania Life Insurance Company of New York. J. D. Thompson, Manager Southwestern Department, Memphis."

The company, after having further considered the application, declined to issue the twenty-pay policy, but it did issue in lieu thereof the fifteen-year policy, this policy being dated the 28th of July, 1892, and forwarded this policy to its agent, Thompson, at Memphis, for the purpose of being delivered by Thompson to the applicant. This policy was received by Thompson, the agent, at Memphis, Tenn., some time prior to August 15, 1892, and on that day, August 15, 1892, Thompson, the agent, addressed a letter to the assured, Bouldin, at Friars Point, Miss., wherein he forwards to Bouldin the insurance policy, together with this letter, and in which, among other things, he writes as follows: "Herewith I hand you policy 88804 on your life for three thousand dollars, with annual premium of one hundred and nine dollars and eighty cents. This policy, as you will see, is on the fifteen-year tontine plan, and only differs from the policy for which you made application in being for fifteen years in place of twenty, and I think is much better for you. The only thing is the policy costs you a little more, but it is paid up five years sooner." This letter was written upon the stationery of the insurance company, upon which was printed or engraved the following: "The Germania Life Insurance Company of New York. J. D. Thompson, General Manager Southwestern Department, Mississippi, Arkansas, and West Tennessee." In due course of mail Mr. Bouldin received this letter inclosing the policy. He says that he never read the policy, but put it away, and he did not know what was in the policy until a short time before the expiration of the fifteen years.

There is a great deal of testimony in the record as to what Thompson, the agent, said to Bouldin as to the benefits to be derived from the policy, and as to Bouldin's reliance upon said statements, both verbal and written. We omit entirely all of this, because it has no bearing upon the question at issue, for the reason

that the policy, and the policy alone, speaks the contract between the parties, and any representations or statements made outside of the policy, either verbally or written, are inadmissible, and can have no bearing upon the question presented. Bouldin promptly paid all of his premiums for the fifteen years. Subsequently to the issuance of the policy, the date as to the payment of the premiums was changed by the consent of both the assured and the company itself, and the premiums were made payable quarterly, instead of annually. We leave out of consideration altogether the testimony of the assured to the effect that he never read this policy until a short time before the expiration of the tontine period, to wit, the fifteen years, for the reason that as heretofore stated, the assured was charged with notice of everything in the policy, whether he read it or not.

A short time previous to the maturity of the policy the assured addressed a letter to the company at New York, this letter being dated June 22, 1907, in which he writes that this policy would mature on the 28th of next month (July), and asks the company for full information as to the exact amount and options of settlement, and requesting specially the amount of settlement upon surrender of policy for cash, paid-up policy, and paid-up policy for face of policy, three thousand dollars, and cash. This letter was received by the company promptly, and on June 26, 1907, the company replied, stating options as follows: ''There would be payable on July 28th next the guaranteed reserve of one thousand two hundred and eighty-four dollars, and its accumulated dividend, amounting to one hundred ninety-two dollars and eighty-two cents ''—and referring Mr. Bouldin to a Mr. Shumaker, in Jackson, Miss., who at that time was the agent of the company, and who would be pleased to communicate with him (Bouldin) further on the subject. After that the assured demanded of the agent of the company the settlement hereinafter referred to, and which is in

accordance with what we regard the terms of the policy. The demands of the assured were denied, and thereupon the complainant brought this his bill in the chancery court, wherein he set forth the facts relating to the transaction, and prays, first, that the defendant be required specially to perform said contract according to its tenor and effect as the said bill specifically charged; or if mistaken in the force and effect of the contract, and if same shall be held not to embody the true intent, meaning, and purpose of the parties, that the said contract be reformed so as to make it speak the true intent of the parties; or, third, if mistaken, that the court adjudge that no contract of insurance was entered into between the parties, that the defendant wrongfully and fraudulently secured of the complainant the aforementioned sums of money, and a decree be rendered against the defendant for all of said sums of money paid it by the complainant, with interest, etc.—and then prays for general relief.

The defendant answers, and admits that the policy was issued upon the application of the complainant, denies that any representations made by the company or its agents are pertinent or relevant, and insists that the contract of insurance was fully set forth in the policy as issued by the defendant and accepted by the complainant, and further insists that it was immaterial whether the defendant, prior to the delivery of the contract, made any representations as to its terms, etc., admits that the complainant paid all the premiums on the policy as required by its terms, and further alleges that the defendant offered to pay to complainant the sum of one thousand four hundred and seventy-eight dollars and eighty-two cents upon the surrender and cancellation of said policy, etc. The policy as issued bears date July 28, 1892, and provides that, in consideration of the annual premium of one hundred and nine dollars and eighty cents, there is to be paid the wife of said in-

sured the sum of three thousand dollars upon the death
of said insured and proof of death, provided said death
occurs before noon of the 28th day of July, 1907.    The
policy, among other things, provides that "this policy is
issued and the same is accepted by the assured upon the
express conditions and agreements printed on the back
hereof, which are referred to and made a part here-
of."    On the back of the policy, and under the heading,
"Conditions and Agreements of This Policy," are
printed certain stipulations:    First, providing for the
payment of premiums; second, service in war; third,
travel and residence; fourth, occupation; fifth, suicide;
sixth, untrue statements; and then, under the head of
agreements, are these provisions:    "This policy, to-
gether with all other dividend tontine policies, the divi-
dend tontine period of which terminates in the same
calendar year, shall form a special dividend class, and
that the said assured, if the person upon whose life in-
surance is taken, shall be living at noon of the 28th day
of July, 1907, and if this policy shall have been kept in
force until then, for its full amount, shall then, with all
the other assured of the same class whose policies are
then in force for their full amounts, share in the appor-
tionment of the dividend fund accrued to the said class."
It is further agreed that, "upon due surrender of this
policy on the day last above mentioned, if this policy
shall have been kept in force until then, the company
will pay to the legal holder the sum of one thousand, two
hundred and eighty-four dollars."

From the evidence in the case, such were the terms
and stipulations of the policy when it was forwarded by
the company from its home office in New York to Thomp-
son, the manager of the company at Memphis, Tenn.;
the company forwarding this policy to its agent, Thomp-
son, for the purpose of delivery by Thompson to the as-
sured.    When Thompson received this policy, he pasted
on the back of it a slip, or rider, as follows:    .

### "TO LIVE AND WIN.

#### "An Investment Insurance.

"Age 30.                Amount of policy,                $3,000.00

"Annual premium, $109.80, payable for 15 years.

                                "Dividend period, 15 years.

If death occurs during dividend period, your heirs will re-
    ceive ...............  .................................$3,000.00

At the end of the dividend period you can select one of the fol-
    lowing options:

  I. Surrender policy for
            cash ...............  .............  .....................

⎱ Reserve, $1,284 ⎱
⎰ Surplus,   777 ⎰

                                                $2,061.00

        Reserve guaranteed and amount stated in policy.

        Surplus guaranteed, but amount estimated based on
            past experience.

        Total premiums paid in 15 years ...................$1,647.00

        Fifteen years' life insurance free and profit ...........   414.00

 II. Paid-up policy for $4,770, having cost only ........... 1,647.00

III. Paid-up policy for $3,000 and cash ...................   777.00

        "You will receive dividends during life on paid-up policy under
second and third options.

        "Policies non-forfeitable and incontestible after three years, and
can be surrendered either for paid-up policy or their cash value.

        "Cash loans made on policies, after they have run three years
or longer, 85 per cent. of reserve at 6 per cent. interest."

Thompson, the agent, after having pasted this slip,
or rider, on the back of the policy, and just immediately
over the printed conditions and agreements, forwarded
the policy, with the slip thereon, by mail to the assured
at his post office in Friars Point, Miss., and, as herein-
before stated, wrote him the letter dated August 15,
1892.

We emphasize three things: First, that the insur-
ance company forwarded the policy to its agent, Thomp-
son, in Memphis, to be delivered by Thompson to the as-
sured; second, that Thompson, the agent, attached to the
insurance policy the rider, or slip, hereinbefore men-

tioned, and forwarded the policy, with the rider thereon, to the assured; and, third, that the assured had no notice or knowledge whatever that Thompson, the agent, attached the rider or slip to the policy, but, upon the other hand, the assured believed that the policy, when received by him, was in the same condition as when it left the home office of the company, with the rider or slip attached thereto.

The lower court held that the policy does not state and embody any contract of insurance according to the true intent and meaning of the parties, that the minds of the parties never met with respect to the terms of any policy of insurance; and the court, finding that the complainant paid to the defendant .the annual premiums for fifteen years, entered a decree in favor of the complainant for the total sum of all the premiums paid, together with six per cent. interest thereon, the premiums, with the interest, amounting to two thousand, eight hundred and seventy-five dollars and eighty-two cents, and entered a decree against the defendant for the payment of this sum of money.

We do not know of any principle upon which this decree can be sustained. "It is a faithful saying, worthy of all acceptation," that when a party comes into a court of equity he is required to do equity, and it is clear, under the facts of this case, that if the complainant had died at any time during the life of this policy—that is, within the fifteen years—the company would have been required to have paid the beneficiary the full amount the policy called for, to wit, three thousand dollars. In other words, the company would not have been in position to have claimed that the policy was not in full force and effect. It was surely bound thereon, and the complainant, having received the protection for the fifteen years, is *ex aequo et bono* compelled to pay for this protection. It certainly would be inequitable and unjust to require the insurance company to refund the total

amount of the premiums received by it, together with the legal interest thereon; but, upon the other hand, it is right and proper that the amount should be charged out of this sum with whatever amount was sufficient to carry the insurance for the period prescribed by the policy. However that may be, we take a very different view of this case from what the learned chancellor in the court below did.

The complainant, who from the evidence is a gentleman of intelligence and splendid business capacity, received the policy, and, instead of informing himself of its terms and conditions, placed the policy among his valuable papers, and it was only a short time before the expiration of the fifteen years when he read the policy and made any effort whatever to inform himself of its contents. In *New York Life Insurance Co.* v. *O'Dom*, recently decided by this court (page 19 *supra*), 56 South. 379, we held that a party who accepts an insurance policy is bound to know, and is chargeable with, the provisions of the policy. It is bound to be the law that although the party may not have read the provisions of his policy, and relied in ignorance of them upon the express representations of the agent, this fact cannot help him when the policy has actually been placed in his hands. It is his business to know what the contents of the written contract of insurance are, and there can be no difference in this respect between an insurance policy and any other contract. In the absence of any fraud in the making of an insurance policy, the insured must be held to a knowledge of the conditions of his policy, as he would be in the case of any other contract or agreement. It certainly would be inequitable and inconsistent with every safe, sound rule of conduct to permit one party to a contract to accept without examination a written contract, and to lay it aside for a long period of time, and then, when the period of termination is about to expire, to for the first time inform himself of its terms.

It shocks the conscience and is at variance with every known rule of business. If the complainant had been an ignorant and illiterate person, and one who was unable to either read or write, it may be that in such an instance he would have the right to rely upon the representations of the company or the agent, as the case may be. This question, however, is not presented by this record for adjudication. We therefore must assume that the complainant, when he received this policy, knew of its terms and conditions and provisions. The law charges him with this notice, and in the eye of the law, knowing the contract and having accepted the policy, he is bound by the terms thereof.

The powers possessed by agents of insurance companies, like those of any other corporation or of an individual principal, are to be interpreted in accordance with the general law of agencies. No other or different rule is to be applied to a contract of insurance than is applied to other contracts. The agent of an insurance company possesses such powers only as have been conferred verbally or by the instrument of authorization, or such as third persons had a right to assume that he possesses under the circumstances of each particular case.

Cases frequently arise where the principal is estopped from denying the authority of his agent, and this is especially true where the agent, with the knowledge and consent of the principal, holds himself out to the world as having certain powers. The essence of estoppel is that the party asserting the agency was deceived by the conduct of the party against whom it is asserted, and, though fraud may be an ingredient of the case, it is not essential. The principal need not authorize the agent to practice a fraud on third parties, yet if he authorize his agent to transact the business with a third party, and in so doing the agent practices the fraud on the party, the principal is liable. The estoppel may be allowed on the score of negligent fault of the principal. Where one or

two innocent persons must suffer loss, the loss will be
visited on him whose conduct brought about the situa-
tion.

We have seen from the evidence in this case that the
company forwarded this policy to Thompson with in-
structions to deliver it to the assured, and that the as-
sured accepted the policy without any notice or knowl-
edge whatever that the slip, or rider, thereon was not
placed there by the company itself at its home office in
New York.  The conclusion must inevitably follow that
under such circumstances the company is bound by any
alteration or modification made by its agent, Thompson,
in the transaction of this business.  The printed condi-
tions, referred to in the body of the policy as being upon
the back of the policy, originally contained a blank space
to be filled in by writing therein the amount, and this
blank was filled in by the company writing therein the
amount, to wit, "twelve hundred and eighty-four dol-
lars."  Now, suppose that, when the agent, Thompson,
received this policy, he had erased these written words,
"twelve hundred and eighty-four," and had inserted
therein a different sum; would it be doubted that the
company would not be responsible for the acts of its
agent, Thompson, in inserting in this blank space the
amount?

It is a well-settled rule of law that insurance policies
are always construed most strongly against the insur-
ance company, and most favorably for the assured.
When the assured received the policy in suit, he read,
or is presumed to have read, as advised in the policy, the
conditions and agreements printed on the back thereof,
and was therefore authorized to construe those condi-
tions and provisions most favorably for himself.  We
find on the back of this policy a printed agreement to the
effect that, upon the surrender of this policy at the ex-
piration of the tontine period, the company would pay to
the legal holder the sum of one thousand, two hundred

and eighty-four dollars, and in addition the insured would share in the apportionment of the dividend funds accruing to the class to which this policy was then in force. Upon examining the slip or rider that was attached to the policy, we find under the first condition the amount of the reserve is one thousand, two hundred and eighty-four dollars as this corresponds with the amount stated in another condition printed on the back of the policy. The surplus is seven hundred and seven-seven dollars, and, while this surplus is not guaranteed, yet the amount "is estimated, based on past experience." We hold that the slip or rider, as pasted on the back of the policy by the agent, Thompson, is a part and parcel of the contract of insurance, and that the complainant is entitled to demand and claim either one of the three options offered to him, to wit: First, the guaranteed reserve of one thousand, two hundred and eighty-four dollars, plus whatever sum may be apportioned by the company of the dividend fund accrued to all the policies in this same class, which amount is not shown in the evidence; or, second, he has the right to demand a paid-up policy for four thousand, seven hundred and seventy dollars, payable at his death; or, third, to demand a paid-up policy for three thousand dollars and seven hundred and seventy-seven dollars in cash, and that, if he accepts either the second or third option, he will receive dividends during the life of the paid-up policy. There is nothing on the slip showing or stating that the amount of paid-up insurance is merely an estimate, but the same is an unqualified guaranty or representation as to the amount of paid-up insurance.

Reversed, with instructions that a decree be entered in accordance with this opinion.

*Reversed.*

Smith, J. (concurring).

Appellant's failure to read the policy is immaterial, for, had he done so, he would simply have verified the

fact that the policy was the character of policy he intended to accept. That the policy was changed by Thompson, after it was given him for delivery to appellee, is also immaterial. In the absence of circumstances indicating to appellee that the fact was otherwise, he was entitled to presume that the policy delivered to him by Thompson was in the same condition that it was when he, Thompson, received it from appellant for delivery.