221 So.2d 75 (1969)
Kenneth McPHERSON and Mabel McPherson
v.
Christine McLENDON, d/b/a General Insurance Agency, James McBride, and National Ben Franklin Ins. Co. of Pittsburgh.
No. 45243.
Supreme Court of Mississippi.
April 7, 1969.
*76 J. Harold Graham, Jr., Crystal Springs, for appellants.
Watkins & Eager, W. Thad Cochran, Jackson, for appellees.
INZER, Justice:
This is an appeal from a directed verdict granted by the Circuit Court of Copiah County for the appellees-defendants in a suit brought upon an oral contract of insurance. The circuit court granted the directed verdict on the ground that the appellants, Kenneth McPherson and his mother, Mabel McPherson, plaintiffs below, had not sufficiently proved apparent authority on the part of appellee Miss Christine McLendon to orally bind appellee National-Ben Franklin Insurance Company to insurance coverage for the appellants' automobile. The trial court also indicated that the pleadings and proof did not show with enough certainty that a contract had been entered into. We cannot agree with either of these conclusions reached by the learned judge and hold that viewing all the evidence favorable to the appellants as true, together with all the reasonable inferences that can be drawn therefrom, a jury question is presented as to both of these issues.
On November 13, 1965, Kenneth McPherson went to Nelson Chevrolet Company in Crystal Springs and selected a car that he desired to purchase. Since he was a minor and he wanted to buy the car on a monthly payment plan, it was necessary that the purchase be made in the name of his mother. He was also told that it would be necessary that he secure collision insurance coverage before the automobile would be released. Rather than purchase that insurance through the dealer which could have been purchased without delay, Kenneth decided to go to a local agency. He selected the General Insurance Agency owned by Miss Christine McLendon and employing Mr. James McBride.
The appellees' agency is of the "independent" variety representing a number of insurance companies. Among the companies is the Continental Group which includes appellee National-Ben Franklin Insurance Company of Pittsburgh. Both Miss McLendon and McBride hold certificates of authority from the Mississippi State Insurance Departments as agents of National-Ben Franklin. The agency agreement between General Insurance Agency and National-Ben Franklin was introduced into evidence by the appellees. It consists of a letter from the Continental Insurance Companies offering to Miss McLendon participation in the Non-Standard Automobile Program of National-Ben Franklin, which she had accepted by countersigning. The letter incorporated by reference, as a term of their agreement, the whole of an agency agreement between Miss McLendon and America Fore Loyalty Group which provides as follows:
WITNESSETH THAT:
Pursuant to request that the underwriting facilities of the Company be made available to the undersigned, as Agent, the Company hereby grants authority to Agent to receive and accept proposals for such contracts of insurance covering risks or properties located in Crystal Springs, Mississippi, and vicinity as the Company has authority lawfully to make; subject however, to restrictions placed upon such Agent by the laws of the state or states in which such Agent is authorized to write insurance business and to the terms and conditions hereinafter set out.
IT IS HEREBY AGREED between the Company and the Agent as follows:
(1) Agent has full power and authority to receive and accept proposals for insurance covering such clauses of risks as the Company may, from time to time, authorize to be insured; to collect, receive and receipt for premiums on insurance tendered by the Agent to and accepted by the Company and to retain out of premiums so collected, as full compensation *77 on business so placed with the Company, commissions at the rates as per Schedule(s) attached.
The letter and an attachment containing underwriting procedures, however, restricted Miss McLendon's authority on non-standard policies to taking applications and submitting them to a branch office. A non-standard risk is defined as "one who has been cancelled, refused or rejected by another company for underwriting reasons."
It was established at the trial that Miss McLendon acted as a general agent for the other companies she represented and had the power to accept and reject insurance risks. Moreover, in order to qualify Kenneth for a non-standard policy, Miss McLendon testified that by way of mental process she took and rejected an imaginary application from Kenneth to the American Employers Insurance Company and entered this information on the application she took on behalf of National-Ben Franklin.
Kenneth testified that Miss McLendon took the information and filled out the application which he signed. He said the agreement was for him to pay $100 of the yearly premium and finance the rest. Pursuant to this agreement he gave Miss McLendon a check for $40. Appellant made a further payment of $30 on November 20, 1965, and another $30 on November 27, 1965. This last check Miss McLendon admitted cashing after she received notice of the accident which severely damaged appellants' car on November 20, 1965. Kenneth was informed by Miss McLendon on November 13, 1965, when he made the $40 payment, that he was covered as of that time.
The sales manager for Nelson Chevrolet Company testified that he called the General Insurance Agency to get them to remind Kenneth to bring his mother along to sign the papers. He was told by McBride that Kenneth had already left but that he was presently covered by National-Ben Franklin and the dealer could release the car. It was also established that McBride worked in the same office as Miss McLendon, his desk a few feet away from hers.
The sale was concluded and Kenneth got his automobile. On November 20, 1965, he was involved in an accident at a train crossing and his new car was badly damaged.
The sales manager testified that he informed the General Insurance Company the day the accident occurred and on the 21st of November McBride came down to the dealership to look at the car. He promised to send an adjuster but the adjuster never arrived.
Miss McLendon testified that on December 2, 1965, she received notice from National-Ben Franklin that Kenneth's application for insurance had been rejected because of his driving record. Presumably they were referring to his accident on the 20th of November as this was the first automobile he had owned.
The application which was placed into evidence by the appellees shows the following pertinent information. The parties were Kenneth McPherson and National-Ben Franklin Insurance Company of Pittsburgh, Pennsylvania. The policy period was from 11:00 A.M. November 13, 1965, to November 13, 1966. The automobile to be covered was a 1966 Chevrolet, two door hardtop, serial number 118376N108345. The limits of liability were set as actual cash value of the vehicle less a $50 deductible in both comprehensive and collision. The premium was set at $317 for the year. The application was signed by Kenneth and Miss McLendon and dated November 13, 1965. Nowhere on the application does it indicate that the application must be accepted by anyone other than Miss McLendon.
The learned trial judge held in granting the directed verdict that the evidence on behalf of the appellees did not establish sufficient circumstances to warrant a reasonable *78 man's belief that Miss McLendon had the authority to bind National-Ben Franklin.
This Court has long held that the general laws of agency apply to agency relationships in the insurance industry. We stated in Germania Life Insurance Co. v. Bouldin, 100 Miss. 660, 56 So. 609 (1911):
The powers possessed by agents of insurance companies, like those of any other corporation or of an individual principal, are to be interpreted in accordance with the general law of agencies. No other or different rule is to be applied to a contract of insurance than is applied to other contracts. The agent of an insurance company possesses such powers only as have been conferred verbally or by the instrument of authorization, or such as third persons had a right to assume that he possesses under the circumstances of each particular case. (100 Miss. at 678, 56 So. at 613).
A general statement of the rule governing apparent authority is found in Steen v. Andrews, 223 Miss. 694, 78 So.2d 881 (1955), recently cited with approval in Union Compress & Warehouse Co. v. Mabus, 217 So.2d 23 (Miss. 1968).
The power of an agent to bind his principal is not limited to the authority actually conferred upon the agent, but the principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have. The agent's authority as to those with whom he deals is what it reasonably appears to be. So far as third persons are concerned, the apparent powers of an agent are his real powers. 2 C.J.S. Agency, §§ 95, 96. This rule is based upon the doctrine of estoppel. A principal, having clothed his agent with the semblance of authority, will not be permitted, after others have been led to act in reliance of the appearances thus produced, to deny, to the prejudice of such others, what he has theretofore tacitly affirmed as to the agent's powers. 2 C.J.S., Agency, § 96 (c). There are three essential elements to apparent authority: (1) Acts or conduct of the principal; (2) reliance thereon by a third person, and (3) a change of position by the third person to his detriment. All must concur to create such authority. 2 C.J.S., Agency, § 96(e). (223 Miss. at 697, 698; 78 So.2d at 883).
The certificates of authority or license held by Miss McLendon and McBride reflect that they were appointed as agents by National-Ben Franklin under the provisions of Mississippi Code 1942 Annotated, Sections 5723-01 and 5723-02 (Supp. 1966) upon the application of the insurance company. It is required that the application state the kind of insurance the proposed agent is authorized to write. Further section 5723-02(a) provides, among other things, "Any license issued under this act shall state the kind or kinds of insurance which the agent is authorized to write." The license here reflected that Miss McLendon of the General Insurance Agency was appointed as an agent and National-Ben Franklin was authorized to contract several types of casualty insurance in this state including auto, fire and physical damage. The license held by McBride was to the same effect.
National-Ben Franklin knew in selecting Miss McLendon as its agent it was selecting a known general agent for several insurance companies with the authority to issue the same type of policy here involved. Although it attempted to limit her authority relative to writing the type of policy involved in this case, they did nothing to give notice to the public that her authority was so limited. Furthermore, there was nothing in the application signed by Kenneth McPherson that would lead him or anyone else to believe that she did not have the authority to enter into a contract of insurance on behalf of National-Ben *79 Franklin. It is as one text writer has indicated:
[5-7] A life insurance company is bound by the acts of its general agents within the scope of their real or apparent authority. Such an agent's authority is determined by the nature of his business, and is prima facie coextensive with his employment, as he has the right to do not only what is customary in obtaining business, but whatever is reasonably incidental thereto. Those dealing with such agent without notice of restrictions upon his authority have a right to presume that his authority is coextensive with its apparent scope, and as broad as his title indicates.
[8-10] One seeking insurance from a general agent is not bound to inquire as to the precise instructions he has received from his company. The restrictions and limitations existing upon the authority of a general agent as between such agent and the company are not binding upon policy holders in their dealings with such agent, in the absence of knowledge of their part of such limitations. Thus, a limitation upon the authority of a general agent, having power to make contracts of insurance, would not relieve the insurer from liability on a policy issued by such agent, though in violation of the limitation, where the insured had neither actual nor constructive notice of such limitation. (16 Appleman, Insurance Law and Practice § 8693 (1968).
The statements apply with equal logic in this case where National-Ben Franklin chose a general agent to handle its insurance policies and secretly restricted that type of agent's customary powers. Certainly these acts on the part of the insurance company were sufficient for the jury to find that the insurance company had clothed her with the apparent authority to contract on their behalf.
It is also clear from the evidence that McPherson relied upon these acts of the insurance company to his detriment. If the representation of immediate coverage had not been made the automobile would not have been delivered to him by the automobile dealer until coverage was obtained. Of course, if there had been no delivery, there would have been no accident.
The trial court also indicated that it was of the opinion that the terms of the contract had not been sufficiently established. This may have been true at the close of appellant's case but the appellees elected to go forward with the proof and at the close of their case all the necessary elements of the oral contract had been sufficiently proved to make it a jury question as to whether a contract of insurance had been entered into by the parties. Hattiesburg Butane Gas Co. v. Griffin, 206 So.2d 845 (Miss. 1968); 12 Appleman, Insurance Law and Practice, § 7196 (1946). For the foregoing reasons this case must be reversed and remanded for a new trial as to all appellees.
Reversed and remanded.
ETHRIDGE, C.J., and RODGERS, JONES and BRADY, JJ., concur.