361 So.2d 1377 (1978)
GULF GUARANTY LIFE INSURANCE COMPANY
v.
Mrs. Erin Lewis MIDDLETON Individually and as Executrix of the Estate of Victor L. Middleton et al.
No. 50464.
Supreme Court of Mississippi.
August 9, 1978.
*1378 Butler, Snow, O'Mara, Stevens & Cannada, W. Scott Welch, III, Christy D. Jones, Jackson, for appellant.
Hall, Callender & Dantin, William C. Callender, Richard D. Foxworth, Columbia, for appellees.
Before ROBERTSON, SUGG and COFER, JJ.
COFER, Justice, for the Court:
Appellant Gulf Guaranty Life Insurance Company (Gulf) on July 24, 1970, issued to appellee Citizens Bank, Columbia, Mississippi, (Bank) a master insurance policy under which Gulf insured the lives of certain debtors of Bank to be chosen from time to time by Bank. Gulf therein bound itself, among other things, upon satisfactory proof of the death of any such insured debtor and affidavit by Bank as to the amount due it by such deceased insured, to pay to Bank the amount of the insured's debt to Bank or the amount of insurance in effect on the life of the deceased, whichever is the smaller, the Bank to apply the amount of insurance thus paid to it by Gulf to the debt of such decedent, any balance being paid by Gulf to the beneficiary named by the insured and recorded by Gulf, or, if no beneficiary had been named, then such balance would be paid to the insured debtor's estate.
As to amounts and periods of insurance, the master policy provided as follows:
5. Each debtor of the creditor who is in insurable health, shall be eligible for insurance hereunder. The maximum amount of insurance under this contract on the life of any debtor shall not exceed the greatest applicable amount specified in the following schedule. The maximum period for insurance under this contract on the life of any borrower shall also be in accordance with the following schedule.

 SCHEDULE
 Age of Maximum Maximum
Insured Debtor Amounts Term of Insurance
15-60 inclusive $10,000.00 36 months
15-50 inclusive 6,000.00 60 months
61-65 inclusive 5,000.00 12 months
66-69 inclusive 1,000.00 12 months

6. No group credit insurance shall be effective irrespective of how many certificates have been issued or how many times entered on an insurance register, on any one life in excess of the maximum amount permitted by the foregoing schedule. It is the intention hereby to limit the company's liability and the coverage of this policy so that regardless of the number of certificates issued or the number of entries made on an insurance register, the maximum liability of the company on any one life shall not exceed the maximum amount permitted by the foregoing schedule. Any excess amount shall be void and the liability for such excess shall be limited to return of premium *1379 paid on such excess. (Emphasis added).
It further provided:
4. This policy with the insurance register sheets or copies of the individual certificates held by the creditor showing the names of the individual borrowers, shall constitute the entire contract between the parties. All conditions, benefits and provisions printed or written by the company on the following pages form part of this policy.
The policy was endorsed by Gulf effective April 14, 1971, to change its paragraph 5 to provide that between ages 15 to 55, inclusive the maximum amount of insurance would be $20,000.
Appellee Broome, (Broome) was at all times pertinent to this decision an officer of Bank and was also general agent of Gulf, by agreement of the Bank and Gulf, for the purpose of this master policy and was licensed as such. The procedure within Bank was that the officer or officers making loans would make out credit insurance policies on borrowers, where desired, from a supply of forms furnished the Bank by Gulf, and at the close of each day would deliver the forms, otherwise completed to Broome for his countersignature as licensed agent of Gulf. Once each month, the policies thus executed were transmitted to Gulf.
One such certificate No. 507740, effective October 23, 1975, involvement of which in this case will be presently noticed, contains these provisions, in fine print:
Gulf Guaranty Life Insurance Company hereby certifies that under and subject to the terms and conditions of this certificate and of the master group credit life and/or accident and health insurance policy issued to the creditor named herein, the insured debtor, is insured for one or more of the coverages listed in this certificate provided that the desired coverage and correct premium for that coverage is so indicated on this certificate. No coverage shall exist whether indicated or not, which is not expressly granted in the master policy issued to the creditor. The amount of insurance continues for a level amount or decreases monthly depending upon the type of plan checked above and in accordance with said master group credit insurance policy until the end of the period for which the insurance was granted when same shall terminate. The proceeds of this insurance are payable to the above named creditor as its interest may appear, and the balance, if any, is payable to the second beneficiary.
* * * * * *
III. Life Insurance. If on the date of this certificate the amount of insurance appearing on the reverse side hereof, when added to other group credit life insurance in force in this company on said date on the same life, exceeds the limits of insurance as set forth below for the correct age of the insured, the company shall be liable only for the return of premiums on such excess. The total amount of insurance coverage in this company on any life shall be limited to the following amounts unless the master policy or endorsements thereof permits coverage in excess of these amounts.

 Age of Maximum Maximum
Insured Debtor Amounts Term of Insurance
15-55 inclusive $20,000 60 months
56-60 inclusive 10,000 36 months
61-65 inclusive 5,000 36 months
66-69 inclusive 1,000 12 months

Bank had credit insurance agreements with other companies with which it could write credit insurance in a manner similar to that with Gulf above detailed.
About October 6, 1972, one Victor L. Middleton, Mary M. Stautberg and James Charles Stautberg obtained a loan from Bank in the principal amount of $80,000 giving security therefor. Middleton agreed to procure $40,000 of life insurance as further security for the loan, in anticipation of which Bank sold to him credit life insurance in several companies, in the amount of $40,000 for periods less than six months. Middleton paying the premiums therefor. Middleton again expressed his intention to procure permanent life insurance, but did not obtain it and Bank did not require him to do so.
*1380 The $80,000 loan was for the purchase of a business by the borrowers, which business they sold on May 10, 1973, to Fashion Shop, Ltd., a part of the consideration of the sale being assumption of the indebtedness to Bank; but the borrowers and the security they had given for the loan were not released from their liability on the Bank's indebtedness.
Middleton had other loan transactions, with credit life insurance with Gulf written on his life, the entire number including the loan here involved, being twelve in number. Until he became fifty-six years old, on March 16, 1974, the maximum amount effective of credit insurance authorized under the master policy was $20,000; from his fifty-sixth birthday, the master policy limit was $10,000.
The certificate from which quotation hereinabove is set out was issued to him on October 23, 1975, in the amount of $10,000, and operated to make the total credit insurance he had with Gulf through the Bank amount to $19,050, $9,050 in excess of the maximum amount provided in his certificate and in the master policy between Gulf and the Bank.
He died on October 24, 1975, and Gulf thereafter paid on debts of the deceased insured $9,050, and offered to pay $950 thereby paying a total of $10,000 and to pay the unearned part of the premium paid for the excess over $10,000. This offer was declined.
Middleton's wife had joined in the indebtedness to Bank to the extent of giving the Bank a lien on certain of her property as security. Fashion Shop, Ltd. had bought the shop from Middleton, et al. and had assumed the indebtedness to Bank, whereon Middleton, and subsequently his estate, remained liable. The widow qualified as executrix of Middleton's estate, and procured the Court's authority to bring suit. She, in her representative capacity and individually, and the Fashion Shop, Ltd., instituted this suit in the Circuit Court of Marion County, against Gulf, Bank and Broome asking judgment, joint and several, for $10,000, plus interest and costs.
The parties stipulated on the pertinent facts, and the cause was, on the pleadings and stipulation, presented to the circuit judge for decision without a jury.
Among the stipulations pertinent to this decision are the facts that Bank through its authorized officers and agents, offered to sell, and sold to Middleton credit life insurance to the extent required to meet the loan authorization commitment of $40,000, same being written with several different companies other than Gulf, for which Middleton paid the required premiums which was accepted by the Bank, at which issuance Middleton agreed to obtain permanent life insurance for the $40,000, which agreement he subsequently expressed again, but which he never did acquire; that, at the sale of the assets of the business to Fashion Shop, Ltd. there was owing to the Bank $69,743.04, which the purchaser assumed as a part of the purchase price, Middleton and the Stautbergs not being relieved of their liability thereon; that appropriate demand has been made for the $10,000 sued for, defendants refusing payment relying on Paragraph III contained on the reverse side of the certificate which Paragraph III has been hereinabove quoted; that Bank and Broome had issued other certificates with Gulf as insurer in the amount of $9,050 which were in effect at Middleton's decease, and in which he had paid the premium, these certificates being with respect to loans to Middleton other than the large loan in the business transaction; that an exhibit to the stipulation showed issuance on Middleton's life in 1973, 1974, and 1975 of twelve certificates which were all issued on his life in those three years, and that on each of them, the required premium was paid by Middleton and accepted by defendants; that on six occasions prior to the October 23, 1975, certificate, Bank and Broome had issued certificates of insurance for Middleton with Gulf as insurer, each resulting in insurance on his life in excess of Gulf's policy limitations, which times were on November 6, 1973, December 3, 1973, January 10, 1974, July 8, 1974, April 12, 1975, and August 22, 1975, on each of *1381 which occasions "the premiums were paid and accepted by all of the defendants, including Gulf Guaranty Life Insurance Company, and the insurance was not refused or rejected." On the occasions specified (on April 12, 1975, and August 22, 1975), Gulf Guaranty Life Insurance Company affirmatively accepted coverage in excess of $10,000 (although not communicating that fact to any party hereto), and placed $5,000 of each $10,000 certificate with another company pursuant to a reinsurance treaty; that the customary practice adopted by the defendants in issuing certificates of insurance with Gulf was that Gulf issued to Bank its master credit life insurance policy, copy exhibited to the stipulation; that Broome, an employee and officer of Bank is designated as an agent of Gulf; each loan officer or his secretary is issued a book of certificates; in accordance with the master policy, the loan officer selects the persons to be insured by Gulf and the amount of the policy and the certificate is completed by the loan officer or his secretary; that the certificates written for each day are delivered to Broome who executes the same as agent of Gulf; the premiums for each certificate are credited to an insurance account in Bank; immediately following the first of each month, certificates written the preceding month are remitted by mail to Gulf together with one-half of the total premiums collected, the other one-half being retained by Bank as commission, and "a customer whose life is insured is not given a copy of the certificate insuring his life unless the same is specifically requested, but a copy of the certificate is placed in the customer's note file and would be available upon request. Plaintiffs were not given a copy of the certificates listed herein, and did not request a copy of the same."
It was further stipulated that the certificates issued in 1973-1975 on Middleton's life were completed by officers or employees of Bank and subsequently countersigned by Broome; that in each instance of insuring Middleton in excess of the limitations noted herein the fact of exceeding the limitation was within the knowledge of Broome and Bank; that Broome and other employees of Bank were agents of other companies with which Middleton's excess insurance could have been placed in full force and effect; that the October 23, 1975, certificate on Middleton's life did not reach Gulf's office until the decease of Middleton; and that Middleton's indebtedness to Bank at all times exceeded the credit insurance; and again, that at all times material to this decision, Broome was an agent of Gulf and an officer and employee of Bank.
There was a further stipulation that, if plaintiffs are entitled to recover the face of the October 23, 1975, certificate they are also entitled to interest on $9,050 from October 24, 1975, to date of payment.
The circuit judge found that Middleton neither requested nor directed Bank or Broome to place the insurance with Gulf or any other particular company, the decision as to selection of the companies with which they put the insurance being left with Broome and Bank; that Gulf accepted insurance certificates on Middleton in excess of the limitations for the six previous occasions; that the payment by Middleton of all premiums thereon were accepted and retained by Gulf with no refusal or denial of any of the policies as being in excess of the limitations, though Gulf had sufficient time in which to do so; that the limitations on amount of insurance were contractual only and not dictated by statute; that the master policy contemplates amendment or change thereof; and that therefore, the limitations could be, and were actually waived by Gulf on those six occasions.
He further reasoned that Gulf's practice of allowing Broome and the Bank to issue the excess insurance on the six occasions under the circumstances hereinabove detailed constituted on Gulf's part a waiver of limitations of the master policy and of the policies issued thereunder and was a ratification of each of the excess insurance transactions; that Gulf is estopped to deny that the October 23, 1975, policy was in full force and effect when it was issued, and that liability thereon arose on his death; and that Gulf is precluded from asserting that the policy was unauthorized or that it was *1382 not in full force and effect at Middleton's death, a contrary decision allowing an unconscionable gain to Gulf and inequitable loss to plaintiffs.
Entering against Gulf judgment for the $10,000 plus interest on $9,050 from Middleton's death the circuit court found Bank and Broome not negligent in any manner in view of the prior conduct of Gulf on the prior occasions of excess insurance; he discharged them without judgment being entered against them or either of them.
From the judgment Gulf appealed and the plaintiffs-appellees took a cross appeal.
On the direct appeal, Gulf assigns as error (1) the circuit court's ruling that Gulf had waived the policy limits and was estopped to deny that the certificate sued upon was in full force and effect when issued and (2) the circuit court's ruling that Gulf ratified the issuance of said insurance certificate and the excess insurance contained therein.
As grounds for their cross appeal, cross appellants assign that the circuit court erred (1) in ruling Bank was without liability to them on the basis that it was not negligent and (2) in ruling that Broome was without liability for the same reason.
We affirm the judgment against Gulf; we reverse as to liability of Bank and Broome.
Gulf contends that there was no ratification of the issuance of the certificate involved herein because the document had not reached it and it had no knowledge of its existence, at the death of the insured, an essential ingredient of ratification of an act not theretofore authorized by the person who is claimed to have ratified it. This, of course, is the law, but can offer no comfort to Gulf. Ratification here is not based upon the issuance of this certificate, but stems from its ratification and approval with knowledge of the facts, of the six instances of excess insurance over a period of three years as shown in this case without objection on account thereof and its acceptance of the benefit, the premiums therefrom.
General laws of agency apply to insurance agency relationships. McPherson v. McLendon, 221 So.2d 75, 78 (Miss. 1969). No authority other than this decision is really essential upon which to base the conclusion reached as to Gulf. In Germania Life Insurance Company v. Bouldin, 100 Miss. 660, 56 So. 609 (1911), cited and quoted from in the McPherson case next above, this Court said:
The powers possessed by agents of insurance companies, like those of any other corporation or of an individual principal, are to be interpreted in accordance with the general law of agencies. No other or different rule is to be applied to a contract of insurance than is applied to other contracts. The agent of an insurance company possesses such powers only as have been conferred verbally or by the instrument of authorization, or such as third persons had a right to assume that he possesses under the circumstances of each particular case.
Cases frequently arise where the principal is estopped from denying the authority of his agent, and this is especially true where the agent, with the knowledge and consent of the principal, holds himself out to the world as having certain powers. The essence of estoppel is that the party asserting the agency was deceived by the conduct of the party against whom it is asserted, and, though fraud may be an ingredient of the case, it is not essential. The principal need not authorize the agent to practice a fraud on third parties, yet if he authorize his agent to transact the business with a third party, and in so doing the agent practices the fraud on the party, the principal is liable. The estoppel may be allowed on the score of negligent fault of the principal. Where one or two innocent persons must suffer loss, the loss will be visited on him whose conduct brought about the situation. (100 Miss. at 678, 679, 56 So. at 613).
In the McPherson case above, the court also quoted from Steen v. Andrews, 223 Miss. 694, 78 So.2d 881 (1955), as follows:

*1383 The power of an agent to bind his principal is not limited to the authority actually conferred upon the agent, but the principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have. The agent's authority as to those with whom he deals is what it reasonably appears to be. So far as third persons are concerned, the apparent powers of an agent are his real powers. 2 C.J.S. Agency Secs. 95, 96. This rule is based upon the doctrine of estoppel. A principal having clothed his agent with the semblance of authority, will not be permitted, after others have been led to act in reliance of the appearance thus produced, to deny, to the prejudice of such others, what he has theretofore tacitly affirmed as to the agent's powers. 2 C.J.S. Agency Sec. 96c. There are three essential elements to apparent authority: (1) Acts or conduct of the principal; (2) reliance thereon by a third person, and (3) a change of position by the third person to his detriment. All must concur to create such authority. 2 C.J.S. Agency Sec. 96e. All three elements concur in this case. (Emphasis added). (223 Miss. at 697, 698, 78 So.2d at 883).
Fundamental fairness in this instance has probably never been expressed more aptly than it was articulated nearly a century ago in Thurmond v. Carter, 59 Miss. 127 (1881). In that case appellant had a contract with the board of supervisors of Tippah County for the work of convicts of that county. One Harris, who the Court found was appellant's agent, received custody of a prisoner from a deputy sheriff. The hour being late, he requested the deputy to take the prisoner to the county jail until the next morning, stating that he had an arrangement with the board of supervisors for such overnight detention. In compliance with Harris' request, the deputy was taking the prisoner to jail, and on the way, the convict was shot. Harris arranged medical attention by appellee. Appellant disclaimed agency relationship with Harris and denied liability to appellee for his services to the prisoner. On affirming judgment for appellee's medical attention, this Court said:
If Harris was the agent of the contractor for the reception and custody of convicts, the latter is liable to the doctor for the services rendered. The contractor says that Harris was not his agent to receive convicts, but the sheriff and the deputy sheriff both testify that they had long been in the habit of delivering the convicts indiscriminately to Harris or to the contractor in person, and more often to the former than to the latter. This is not denied by the contractor, though he had the opportunity to deny it. We must assume, therefore, that it was true. If so, the contractor could not silently acquiesce in such reception by Harris and obtain the benefit of it so long as it proved advantageous, and repudiate it when an unfortunate occurrence made it to his interest to do so. (Emphasis added). (59 Miss. at 130).
To relieve Gulf of liability on this policy would equate the facts hereof to a life insurance policy good and enforceable if the insured lives, but rendered void by his death. To us this is not just or equitable.
Gulf argues that waiver and estoppel may not enlarge the risks covered by a policy or create a new and different contract. We do not reach this argument finding in it nothing overcoming the conclusion already hereinabove expressed.
The circuit court was in error, we think, in finding Bank and Broome not negligent in this case, being relieved of such guilt by the fact that "the prior conduct of the defendant Gulf Guaranty Life Insurance Company clothed them with the authority to issue the certificate of insurance in question ..." Paragraph 14 of the stipulation says:
14. That at all times when insurance in excess of the aforesaid limitation was written, the fact that an amount in excess of the limitation was being written was within the knowledge of Pat Broome *1384 and Citizens Bank. Pat Broome and/or some other employee of Citizens Bank was the agent of other insurance companies with which said excess insurance could have been written and placed in full force and effect.
When the premium was paid on the certificate here involved, by or for Middleton, it was accepted and retained by Bank and Broome, as were all the premiums on credit life insurance issued on his life on the earlier occasions set out in the record, and Bank and Broome "assumed a contractual obligation to obtain credit life insurance" for Middleton, "and to apply the amounts so received to credit life insurance, and ... stood in a fiduciary capacity towards [cross appellants and Middleton] to see that the amounts so charged, collected and withheld were actually applied to obtaining and purchasing such insurance." Parnell v. First Savings and Loan Association of Leakesville, 336 So.2d 764, 768 (Miss. 1976). Inherent in this contractual-fiduciary relation was the promise and responsibility that the insurance would not be a scrap of paper subject to question, though unsuccessfully done as here, but would be such as to afford protection to the insured's estate in case of his death. The charge of negligence on their part may not be explained away or avoided.
Half the premiums were retained by the Bank, and the defendants have offered to refund the premium on the excess portion of the certificates.
The master policy recognizes that excess insurance may be written as contained in the statement in paragraph 6, hereinabove quoted, to-wit:
6. No group credit insurance shall be effective irrespective of how many certificates have been issued or how many times entered on an insurance register, on any one life in excess of the maximum amount permitted by the foregoing schedule. It is the intention hereby to limit the company's liability and the coverage of this policy so that regardless of the number of certificates issued or the number of entries made on an insurance register, the maximum liability of the company on any one life shall not exceed the maximum amount permitted by the foregoing schedule. Any excess amount shall be void and the liability for such excess shall be limited to return of premium paid on such excess.
We determine that Bank and Broome were negligent in the issuance of this certificate.
Along with Gulf, they are held liable also, but secondarily to Gulf's liability, for the full amount of the certificate and all interest thereon, collection of which is to be had against them only if collection against Gulf proves impossible. Mississippi Code Annotated, sections 11-7-177 and 11-7-179 (1972). Aven v. Singleton, 132 Miss. 256, 266-267, 96 So. 165, 167-168 (1923).
Affirmed as to Gulf; reversed and rendered as to Bank and Broome.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
PATTERSON, C.J., SMITH, P.J., ROBERTSON, P.J., and SUGG, WALKER, LEE and BOWLING, JJ., concur.
BROOM, J., took no part.